Daniel Feinberg (SBN No. 135983)
FEINBERG, JACKSON,
WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel. (510) 269-7998
Fax (510) 269-7994
dan@feinbergjackson.com

*Counsel for Plaintiff and the Proposed Class*
*Additional Counsel Below*

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA DAILEY, on behalf of the LinkUs Holdings, Inc. Employee Stock Ownership Plan and on behalf of all other persons similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>HORACIO GUZMAN, DANT MORRIS, JON WARREN, JOSEPHINA GUZMAN, JAMES URBACH, THE ADMINISTRATIVE COMMITTEE OF THE LINKUS HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN, and LINKUS HOLDINGS, INC.<br><br>    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

CLASS ACTION COMPLAINT

2562022 v1

## I.  INTRODUCTION

1.      Plaintiff Jessica Dailey, by her undersigned attorneys, on behalf of the LinkUs Holdings, Inc. Employee Stock Ownership Plan ("the ESOP" or "the Plan") and a proposed class of similarly situated participants and their beneficiaries (the "Class"), alleges upon personal knowledge, the investigation of her counsel, and upon information and belief as to all other matters, as to which allegations she believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

2.      This is a civil enforcement action brought pursuant to Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3).

3.      The ESOP is a type of pension plan, specifically, an employee stock ownership plan that is designed to invest primarily in the stock of its sponsor, LinkUs Holdings, Inc. ("LinkUs" or "Company"), pursuant to ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6).

4.      The claims in this action stem from the ESOP's purchase of stock from Defendants Horacio Guzman, Josephina Guzman, Dant Morris and Jon Warren (the "Selling Shareholder Defendants") in April 2013 ("ESOP Transaction"); the Defendants' concealment of fiduciary violations in the ESOP Transaction and in plan administration, including providing fabricated documents to the U.S. Department of Labor; inflated valuations of LinkUs stock from 2013 – 2018; the failure of the Plan's fiduciaries to remedy fiduciary violations in the ESOP Transaction and the inflated valuations; and the resulting loss of millions of dollars by the ESOP and its participants.

5.      The ESOP Trustee, James Urbach ("Urbach"), represented the ESOP and its participants in the ESOP Transaction. Urbach had sole and exclusive authority to negotiate the terms of the ESOP Transaction on the ESOP's behalf and has continued to serve as Trustee following the ESOP Transaction.

6.      In contravention of their fiduciary duties and ERISA's prohibited transaction rules, Urbach, the Director Defendants and the Selling Shareholder Defendants orchestrated the sale of the Company to the ESOP for greater than fair market value.

CLASS ACTION COMPLAINT                    1

7.    Specifically, the Selling Shareholder Defendants negotiated an inflated sale price with Urbach, which unjustly enriched the Selling Shareholder Defendants, and caused harm to the ESOP participants, who are current and former employees of the Company.

8.    As a result of ERISA violations by the fiduciaries entrusted with their Plan, Plaintiff and the Class have not received all of the hard-earned retirement benefits or the loyal and prudent management of the ESOP to which they are entitled.

9.    As alleged below, the sale price for the ESOP Transaction failed to adequately account for LinkUs's dependence on a single contract, unfavorable industry trends, LinkUs's liability for wage and hour violations, and the warrants received by the certain Selling Shareholder Defendants as part of the ESOP Transaction.

10.    At all relevant times, Defendant LinkUs was a closely held company and its stock did not trade on any securities market.

11.    ERISA Sections 409(a), 502(a)(2) & (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) & (a)(3), authorize participants such as Plaintiff to sue in a representative capacity for any losses suffered by the ESOP, and other relief.  Pursuant to that authority, Plaintiff brings this action on behalf of the ESOP and on behalf of all vested participants in the ESOP and their beneficiaries for violations of ERISA §§ 404, 406, and 410, 29 U.S.C. §§ 1104, 1106 and 1110.

12.    **Subject Matter Jurisdiction**.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

13.    **Personal Jurisdiction**.  This Court has personal jurisdiction over Defendants because they transact business in, and have significant contacts with, this District, and because ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), provides for nationwide service of process.

14.    **Venue.**  Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), for at least the following reasons:

(a)    The ESOP is administered in this District;

(b)    Defendants may be found in this District, as they transact business in, and/or have significant contacts with this District;

(c)    Some Defendants reside in this District; and/or

CLASS ACTION COMPLAINT                2

(d)    Some of the alleged breaches took place in this District.

15.    **Intradistrict Venue.** This action arises in Fresno County for purposes of Eastern District of California Local Rule 120(d).

## II.  PARTIES

**Plaintiff**

16.    Plaintiff Jessica Dailey is a former employee of LinkUs Enterprises, LLC, and a participant in the ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). Plaintiff Dailey worked at LinkUs Enterprises, LLC, between 2002 and May of 2020. Plaintiff was the Director of Communications from 2017 until the termination of her employment. At the time she left LinkUs Enterprises, LLC, Plaintiff Dailey was vested in the ESOP. She currently resides in Madera, California.

**Defendants**

17.    **Defendant James Urbach** ("Urbach') is the Trustee of the ESOP within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a). Urbach holds, manages and controls the ESOP's assets. Urbach is a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) because he exercises discretionary authority or discretionary control respecting management of the ESOP, exercises authority and control respecting management or disposition of the ESOP's assets, and/or has discretionary authority or discretionary responsibility in the administration of the ESOP. As Trustee, Urbach is a named fiduciary of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102. Defendant Urbach acted on behalf of the ESOP in the ESOP's purchase of LinkUs stock from the Selling Shareholder Defendants. The Summary Plan Description for the ESOP lists a business address for Mr. Urbach in Fresno, California. Upon information and belief, Mr. Urbach resides in Atlantic Beach, Florida.

18.    **Defendant Jon Warren** is and at all relevant times was the Chief Financial Officer of LinkUs Enterprises, LLC, a Director of LinkUs, and a member of the Administrative Committee. As a result of his membership on the Board of Directors and the Administrative Committee, Mr. Warren is and has been at all relevant times a fiduciary of the ESOP within the meaning of ERISA

CLASS ACTION COMPLAINT                 3

§ 3(21)(A), 29 U.S.C. § 1002(21)(A), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). Warren resides in Anderson, California.

19. **Defendant Horacio Guzman** is and at all relevant times was the Chief Executive Officer of LinkUs Enterprises, LLC, a Director of LinkUs, and a member of the Administrative Committee. As a result of his membership on the Board of Directors and the Administrative Committee, Mr. Guzman is and has been at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). Horacio Guzman resides in Dinuba, California.

20. **Defendant Josephina Guzman (also known as Josephine Guzman)** is the former spouse of Defendant Horacio Guzman and was a LinkUs shareholder prior to the ESOP Transaction. At the time of the ESOP Transaction, Ms. Guzman was a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14), as a 10 percent or more shareholder in an employer whose employees are covered by the ESOP. Ms. Guzman resides in Dinuba, California.

21. **Defendant Dant Morris** is and at all relevant times was a Director of LinkUs and a member of the Administrative Committee. As a result of his membership on the Board of Directors and the Administrative Committee, Mr. Morris is and has been at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). Morris resides in Fresno, California.

22. **Defendant Administrative Committee** is a designated Plan Administrator of the ESOP within the meaning of ERISA § 3(16)(A), § 1002(16)(A), and a named fiduciary of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102. The Administrative Committee is and was a fiduciary of the ESOP under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), by virtue of its position as Plan Administrator and because it exercised discretionary authority or discretionary control respecting the management of the ESOP, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

23.  **Defendant LinkUs** is the Plan Sponsor within the meaning of ERISA § 3(16)(B), § 1002(16)(B), and designated as a Plan Administrator of the ESOP within the meaning of ERISA § 3(16)(A), § 1002(16)(A), with the discretion to delegate its duties and responsibilities as Plan Administrator. Defendant LinkUs delegated its duties and responsibilities as Plan Administrator to the Administrative Committee but retained the duty to monitor the Administrative Committee's performance of its duties and responsibilities as Plan Administrator. Defendant LinkUs is a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) because it exercises discretionary authority or discretionary control respecting management of the ESOP, exercises authority and control respecting management or disposition of the ESOP's assets, and/or has discretionary authority or discretionary responsibility in the administration of the ESOP. LinkUs's primary corporate office is in Fresno, California, with an additional corporate office in Anderson, California.

24.  Defendants Horacio Guzman, Josephina Guzman, Morris and Warren are referred to herein as the "Selling Shareholder Defendants." Defendants Horacio Guzman, Morris and Warren are referred to herein as the "Director Defendants."

### III.  FACTUAL ALLEGATIONS

**LinkUs's Dependence on DISH Network Corporation**

25.  Defendant LinkUs's primary business operation at all relevant times is and has been as a Regional Service Provider ("RSP") to DISH Network Corporation ("Dish"). LinkUs installs and maintains Dish satellite TV equipment in certain regions of California, Nevada, Oregon, Idaho, Washington, and Montana. The states and regions serviced by LinkUs have varied over the relevant time period.

26.  LinkUs is heavily dependent on Dish for its revenues. At the time of the ESOP Transaction, approximately 85% of LinkUs's revenue came from its Dish RSP business operations. LinkUs's contract with Dish had a five-year term. LinkUs's contract with Dish permitted Dish to reduce LinkUs's service area or terminate LinkUs as an RSP at the end of the contract term.

27.  In the years leading up to the ESOP Transaction, Dish significantly reduced the number of RSPs, and industry insiders believed that Dish would continue to reduce the number of

CLASS ACTION COMPLAINT                    5

RSPs. Dish's strategy of reducing the number of RSPs placed LinkUs's contract with Dish at risk of termination at the time of the ESOP Transaction. In addition, Dish took away a portion of LinkUs's service area in Nevada, the Central Coast of California and the Inland Empire of California prior to the ESOP Transaction as a punishment for perceived failures by LinkUs to meet Dish's expectations.

28.    At the time of the ESOP Transaction, there were two primary satellite TV providers in the United States – DirecTV and Dish. DirecTV had significantly more subscribers than Dish and Dish had been unable to gain market share.

29.    In the years leading up to the ESOP Transaction, both the number and the percentage of United States households subscribing to Pay TV services had stagnated or declined for several years.

30.    In the years leading up to the ESOP Transaction, there was increasing media coverage of "cord cutting" – consumers cancelling their subscriptions to Pay TV services available over cable or satellite and instead relying on media available over the internet, such as Netflix and YouTube.

31.    In the years leading up to the ESOP Transaction, there was also increasing media coverage of Pay TV "Nevers" – young adults who were not signing up for Pay TV services when they established their own households because they relied on media available over the internet.

32.    A Deloitte survey in January 2012 reported that 9% of Americans had cut the cord and a further 11% were planning to do so.

33.    On August 7, 2012, the Wall Street Journal reported that there was a decline in overall Pay TV subscribers in the second quarter of 2012. The Wall Street Journal reported that the chairman of Dish, Charlie Ergen, acknowledged that consumers were switching to cheaper alternatives to Pay TV and cited his own children as proof of this trend. According to the Wall Street Journal, cable TV operators were focusing on growth in their internet-access broadband business, but this option was not available to satellite TV companies such as Dish which did not provide internet access.

CLASS ACTION COMPLAINT                6

34. Prior to the ESOP Transaction, cord cutting had started to reduce LinkUs's volume of Dish installations and LinkUs management was worried about this trend.

35. Prior to the ESOP Transaction, the Director Defendants/Selling Shareholder Defendants were aware that LinkUs was heavily dependent on its Dish RSP business operations for revenue. Prior to the ESOP Transaction, the Director Defendants/Selling Shareholder Defendants were aware that LinkUs's contract with Dish had a five-year term, and that Dish could choose not to renew the contract and also had the discretion to reduce LinkUs's service area.

36. Prior to the ESOP Transaction, the Director Defendants/Selling Shareholder Defendants were aware that Dish had significantly reduced the number of RSPs and further reductions were expected.

37. Prior to the ESOP Transaction, the Director Defendants/Selling Shareholder Defendants were aware that Dish had taken away a portion of LinkUs's service area in Nevada as a punishment.

38. Prior to the ESOP Transaction, the Director Defendants/Selling Shareholder Defendants were aware that the number and the percentage of United States households subscribing to Pay TV services had stagnated or declined for several years and were also aware of the threat that this trend posed to LinkUs's business operations.

39. Prior to the ESOP Transaction, the Director Defendants/Selling Shareholder Defendants were aware of the cord-cutting and "Never" Pay TV trends and the threat that these trends posed to LinkUs's business operations.

40. In addition, LinkUs and its operating companies faced significant liability at the time of the ESOP Transaction due to wage and hour violations. LinkUs has been sued repeatedly for wage and hour violations and has paid millions of dollars in settlements. LinkUs's payroll practices that violated wage and hour laws were known or knowable at the time of the ESOP Transaction. Prior to the ESOP Transaction, the Director Defendants/Selling Shareholder Defendants were aware of repeated lawsuits against LinkUs for wage and hour violations, the millions of dollars paid for settlement of these lawsuits, and that LinkUs faced future liabilities for its failure to comply with state and federal wage and hour laws.

CLASS ACTION COMPLAINT                    7

**The LinkUs ESOP**

41.    According to the Articles of Incorporation obtained from the California Secretary of State, LinkUs Holdings, Inc. was incorporated in Delaware on March 25, 2013, with its corporate office in Fresno, California.

42.    Effective April 29, 2013, as the result of the approval of a Plan of Reorganization, Defendant LinkUs became the successor corporation to LinkUs Enterprises, Inc.

43.    LinkUs Enterprises, Inc. adopted the LinkUs Enterprises, Inc. Employee Stock Ownership Plan created effective January 1, 2012.

44.    On April 11, 2013, LinkUs Enterprises, Inc. was merged into Alpine Back Office Services, LLC, which are both owned by Defendant LinkUs Holdings, Inc. Each share of LinkUs Enterprises, Inc. stock was exchanged for 1.053652 shares of LinkUs Holdings, Inc. stock and each share of Alpine Back Office Services, LLC stock was exchanged for 5.3244 shares of LinkUs Holdings, Inc. stock. On the same date, the name of the Plan was changed to the LinkUs Holdings, Inc. Employee Stock Ownership Plan.

45.    The Plan is a leveraged employee stock ownership plan, or "leveraged ESOP," designed to invest primarily in the employer securities of LinkUs.

46.    On April 11, 2013, the Director Defendants authorized the contribution of 49,275 shares of LinkUs common stock held in treasury to the Plan as the Company contribution for 2013.

47.    On April 12, 2013, the Director Defendants approved loan agreements with Wells Fargo Bank totaling $39,268,738. The financing consisted of a $3,000,000 revolving loan, a $9,600,000 senior term loan and a $26,668,738 one-day bridge loan. Repayment of the bridge loan was to be made with funds from junior subordinated notes. Repayment of senior term loan was to be in monthly installments of $201,511, excluding interest, for the first 24 months and then in monthly installments of $79,390, excluding interest, for 60 months. The Company entered into an interest rate swap contract in connection with this note.

48.    On April 30, 2013, Defendant Urbach, as Trustee of the ESOP, caused the ESOP to purchase a total of 1,769,499 shares of LinkUs common stock, said shares constituting 88.47% of the outstanding stock of the Company and 100% of the outstanding stock not owned by the Plan.

CLASS ACTION COMPLAINT                    8

The purchase price of $19.34 per share, or a total of $34,222,111, was based upon a valuation of $41,565,448 for the Company's equity. The ESOP borrowed from LinkUs the entire $34,222,111 to fund the purchase price.

49.    As part of the ESOP Transaction LinkUs or LinkUs Enterprises, Inc. contributed the remaining shares of LinkUs common stock to the ESOP in April 2013.

50.    The ESOP's LinkUs stock was initially held in a suspense account. Defendant LinkUs makes an annual contribution to the Plan and stock is released from the suspense account and allocated to the participants based on the ratio of the current year's principal payment on the ESOP loan divided by the total principal payment for the current year and all future years during the term of the loan.

51.    Prior to the ESOP Transaction, the Selling Shareholder Defendants owned the majority of the Company Stock. The Selling Shareholder Defendants sold the majority of the shares purchased by the ESOP in the ESOP Transaction.

52.    As part of the ESOP Transaction financing, the Selling Shareholder Defendants or some of them loaned LinkUs $26,668,738 in exchange for junior subordinated unsecured notes and stock warrants. The Selling Shareholder Defendants or some of them initially received stock warrants to acquire 1,194,221 shares (representing 37.4% of the equity interest) of LinkUs with an exercise price of $2.57 per share. On January 1, 2014, LinkUs issued additional warrants to the Selling Shareholder Defendants or some of them to purchase an additional 199,535 shares and the exercise price was adjusted to $2.20 per share.

53.    The ESOP paid more than fair market value in the ESOP Transaction. On information and belief, the purchase price was based in part on a valuation report that was unreliable.

54.    The ESOP took on excessive debt as a result of the ESOP's overpayment for LinkUs stock in the ESOP Transaction. The excessive debt lowered the amount of stock released from the suspense account and released to participants each year.

55.    Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The ESOP

CLASS ACTION COMPLAINT                9

Transaction price was based on unrealistic financial projections and did not adequately reflect future revenue and earnings given Pay TV industry and Dish financial trends known or knowable at the time of the ESOP Transaction. The Pay TV industry and Dish financial trends alleged above were known to the Selling Shareholder Defendants at the time of the ESOP Transaction. The Director Defendants helped prepare the financial projections that Urbach and his advisors relied upon for the ESOP Transaction and the Director Defendants knew that the financial projections were unrealistic and did not adequately reflect future revenue and earnings given Pay TV industry and Dish financial trends known or knowable at the time of the ESOP Transaction.

56.    Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The ESOP Transaction price was based on a valuation report that did not adequately reflect the financial risks posed by LinkUs's dependence on its RSP contract with Dish and Dish's ability to not renew the contract or modify or terminate the contract. LinkUs's dependence on its RSP contract with Dish and Dish's ability to not renew the contract or modify or terminate the contract were known to the Selling Shareholder Defendants at the time of the ESOP Transaction. The Director Defendants helped provide due diligence responses that Urbach and his advisors relied upon for the ESOP Transaction. The Director Defendants knew that their due diligence responses did not adequately reflect the financial risks posed by LinkUs's dependence on its RSP contract with Dish and Dish's ability to not renew the contract or modify or terminate the contract.

57.    Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The ESOP Transaction price was based on a valuation report that did not adequately reflect LinkUs's potential liability for wage and hour violations. LinkUs's potential liability for wage and hour violations was known to the Selling Shareholder Defendants at the time of the ESOP Transaction. Director Defendants helped provide due diligence responses that Urbach and his advisors relied upon for the ESOP Transaction. The Director Defendants knew that their due diligence responses did not adequately reflect the financial risks posed by LinkUs's potential liability for wage and hour violations.

CLASS ACTION COMPLAINT                    10

58. Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The ESOP Transaction price was based on a valuation report that did not adequately reflect the impact of the warrants issued to certain Selling Shareholder Defendants on the value of the equity purchased by the ESOP.

59. Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The ESOP Transaction price was based on a valuation report that included a control premium even though the ESOP did not gain control of LinkUs in the ESOP Transaction. Further, the ESOP Transaction price did not include a discount for lack of control. The Director Defendants controlled LinkUs both before and after the ESOP Transaction.

60. The Selling Shareholder Defendants/Director Defendants knew that ESOP overpaid for the Company stock in the ESOP Transaction.

61. LinkUs took on excessive debt as part of the ESOP Transaction which has impaired the value of the ESOP's Company stock.

62. Because the Director Defendants' responsibilities include strategic planning and capital management for the Company, they knew that the ESOP Transaction required the Company to take on excessive debt.

63. A prudent fiduciary who had conducted a prudent investigation would have concluded that the ESOP was paying more than fair market value for the LinkUs stock in the ESOP Transaction and/or the ESOP debt incurred in connection with the ESOP Transaction was excessive.

64. Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Urbach's due diligence in the course of the ESOP Transaction was far less extensive than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The ESOP overpaid for LinkUs stock in the ESOP Transaction because of Urbach's failure to conduct adequate due diligence.

CLASS ACTION COMPLAINT                    11

65.    The valuation report and fairness opinion obtained by Urbach for the ESOP Transaction was not provided to Plaintiff or other the participants of the ESOP.

66.    Defendants never informed Plaintiff or other participants of the warrants issued to certain Selling Shareholder Defendants as part of the ESOP Transaction or thereafter. Plaintiff had no knowledge of the  warrants until 2021. Plaintiff first learned of the warrants in 2021 based on her counsel's investigation.

67.    The Director Defendants, acting on behalf of the Company, appointed Urbach to be the Trustee of the ESOP in or about 2013 and appointed the members of the Administrative Committee of the ESOP from in or about 2013 to the present. The Director Defendants had an ongoing obligation to monitor Urbach and the Administrative Committee to ensure that they were acting prudently, loyally and in conformance with ERISA's fiduciary requirements and that the ESOP did not violate the prohibited transaction rules when purchasing the Company stock. The Director Defendants' duty to monitor included a duty to make sure that Urbach was investigating, evaluating, and pursuing the ESOP's legal claims arising from fiduciary violations and prohibited transactions in connection with the ESOP Transaction.

68.    As required by 29 U.S.C. § 1102, the ESOP was established and is currently maintained pursuant to a written instrument, titled the LinkUs Holdings, Inc. Employee Stock Ownership Plan (the "Plan Document").

69.    The Plan Document states that LinkUs is the "Plan Administrator" unless the Company designates another person or persons to hold the position. The Plan Document provides that in the absence of such a delegation, the Board of Directors shall assume all powers, duties and responsibilities of the Plan Administrator. Among other duties, the Plan Document provides that the Plan Administrator has full responsibility for compliance with the reporting and disclosure rules under ERISA.

70.    The 2012 Summary Plan Description (SPD) for the ESOP states that the Board of Directors appoints members of the Defendant Administrative Committee to be the Plan Administrator for the ESOP and referred to as the "Plan Administrator" in the Plan Document.  The

CLASS ACTION COMPLAINT                12

2012 SPD further states that the members of the Defendant Administrative Committee are Defendants Warren, Horacio Guzman and Morris.

71. In addition to the Administrative Committee, LinkUs created an "ESOP Committee" to act as a liaison to employees to keep them informed about the ESOP.

72. Membership on the ESOP Committee changed over time. Plaintiff was a member of the ESOP Committee prior to the termination of her employment.

73. The ESOP Committee was not a fiduciary of the ESOP and had no role in the ESOP Transaction. Defendant Morris informed the HR Manager of LinkUs that the ESOP Committee would never vote on any matters or have any say in management of the ESOP or Company.

74. The ESOP Committee was supposed to meet quarterly; however, the ESOP Committee did not meet prior to the DOL investigation discussed below.

75. As a direct and proximate result of the actions of the Defendants related to the ESOP Transaction, the ESOP and its participants have suffered millions of dollars of losses, for which all Defendants are jointly and severally liable.

**The DOL Investigation of the ESOP and Concealment of Fiduciary Violations**

76. In or about 2016, the U.S. Department of Labor (DOL) opened an investigation into the LinkUs ESOP. The investigation remains open. Defendants have never informed Plaintiff or other participants about the DOL investigation.

77. In or about 2016, the DOL requested documents relating to the ESOP from Defendants in conjunction with its investigation of the LinkUs ESOP. The DOL's document request included a request for minutes of meetings of the Administrative Committee and the ESOP Committee.

78. In or about 2016, Defendant Warren asked the LinkUs HR Manager for copies of minutes for ESOP Committee meetings. However, the ESOP Committee had not met prior to the DOL investigation; therefore, the HR Manager informed Defendant Warren that there were no such minutes. Defendant Warren instructed the HR Manager to create and backdate minutes for ESOP Committee meetings and then make sure that ESOP Committee meetings took place every quarter in

CLASS ACTION COMPLAINT                    13

the future. As instructed by Defendant Warren, the HR Manager created and backdated minutes for ESOP Committee meetings that had not in fact taken place.

79.    Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. In or about 2016, the Director Defendants provided copies of the fabricated ESOP Committee minutes to the DOL in response to the DOL's document request. All of the Director Defendants knew that the ESOP Committee minutes were fabricated.

80.    Beginning in or about early 2017, the ESOP Committee began meeting. ESOP Committee meetings were conducted by conference call as ESOP Committee members worked in different locations. The ESOP Committee met about once per year from 2017 until the end of Plaintiff's employment. The ESOP Committee meetings were irregular and sometimes cancelled or rescheduled by Defendant Horacio Guzman. In addition to the ESOP Committee members, Defendant Horacio Guzman, the LinkUs HR Manager, and the Benefits Coordinator participated in the meetings.

81.    In or about 2017, the DOL issued findings that the Plan overpaid for LinkUs stock in the ESOP Transaction due to a flawed valuation prepared by Urbach's valuation advisor. Urbach and the Director Defendants failed to take appropriate corrective action in response to the DOL's findings.

82.    Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. In or about 2017, the DOL informed Defendants that the valuations for the ESOP's LinkUs stock were inflated in part because the valuations failed to account for the value of the warrants received by certain Selling Shareholder Defendants as part of the ESOP Transaction.

83.    Defendants have intentionally concealed the existence of the DOL investigation and the DOL's findings from Plaintiff and other participants.

84.    The Plan's 2018 Form 5500 signed by Defendant Warren and filed with the DOL on October 14, 2019, includes a Note to the financial statements stating that the Plan "has been undergoing an audit by the [DOL]" and the DOL during the 2018 Plan Year "issued findings that in

CLASS ACTION COMPLAINT            14

its opinion the Plan overpaid for the stock in the initial transaction due to their view of the valuation issued by the Trustee's valuation advisor." Defendants did not provide a copy of the 2018 Form 5500 to Plaintiff or other participants, nor did Defendants otherwise inform Plaintiff or other participants of the DOL's findings.

85.     The Plan's 2018 Form 5500 stated that the value of the Plan's LinkUs stock as of December 31, 2018 was $35,782,000.00.

86.     The Plan's 2019 Form 5500 signed by Defendant Warren and filed with the DOL on October 13, 2020, includes a Note to the financial statements stating that the value of the Plan's LinkUs stock had been greatly overstated in the 2018 Form 5500 and prior Form 5500s. The 2019 Form 5500 stated that the 2018 valuation used for the 2018 Form 5500 had failed to account for the warrants held by Selling Shareholder Defendants, which permitted Selling Shareholder Defendants or some of them to purchase shares of common stock equal to up to 37.4% of the Company's outstanding stock at an adjusted price of $2.20 per share at any time through April 15, 2025. The 2019 Form 5500 further stated that because the ESOP only owned 62.6% of the Company on a fully diluted basis rather than 100% of the Company, the stock value reported in the 2018 Form 5500 was inflated by $13,373,987.00.  As a result, the 2019 Form 5500 stated that the value of the ESOP's LinkUs stock was $22,408,013.00 as of December 31, 2018, rather than $35,782,000.00. Defendants did not provide a copy of the 2019 Form 5500 to Plaintiff or other participants, nor did Defendants otherwise inform Plaintiff or other participants of the explanation for the change in the valuation of the Plan's stock as of December 31, 2018.

87.     The valuation of the Plan's LinkUs stock was inflated in all Form 5500s filed by LinkUs from 2013 – 2018 because of the failure to account for the warrants held by the Selling Shareholder Defendants or some of them.

88.     Defendants first informed Plaintiff and other participants that their ESOP stock had been overvalued from 2013 – 2018 by a notice from LinkUs dated December 2020. The notice stated that "It has been discovered that due to the use of an incorrect value for the shares of the Company's Stock for each of the years 2013 through 2018 all the Participants' accounts were over-valued for each of those years. The error was not discovered until the 2019 valuation was being prepared in

CLASS ACTION COMPLAINT                    15

2020." The notice did not provide any explanation for the overvaluation or any information about the pending DOL investigation or the DOL's findings. The December 2020 notice from LinkUs did not disclose the fact that the ESOP purchased LinkUs shares in the ESOP Transaction in 2013 at an inflated price.

89.     The annual valuation reports for the years 2013 to 2018 were prepared by a valuation advisor retained by Defendant Urbach. The 2013 – 2018 annual valuation reports were also provided to LinkUs and the members of the Administrative Committee.

90.     Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Urbach and the members of the Administrative Committee reviewed the 2013 – 2018 annual valuation reports. Urbach and the members of the Administrative Committee knew or should have known that the share price used for valuing the ESOP's LinkUs stock did not account for the warrants held by Selling Shareholder Defendants.

91.     The reported value for the ESOP's LinkUs stock declined by 46% in 2019, primarily because of the overvaluation caused by the failure to account for the Selling Shareholder Defendants' warrants in the 2018 valuation.

92.     Plaintiff had no knowledge that Defendants had reported inflated values for LinkUs stock from 2013 - 2018 until she received the notice from LinkUs in December 2020.

93.     Plaintiff had no knowledge of the DOL investigation or the DOL's findings until 2021. Plaintiff first learned of the DOL investigation and the DOL's findings in 2021 based on her counsel's investigation.

94.     Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Defendants Warren, Horacio Guzman and Morris were aware of the DOL's investigation in or about 2016 and were aware of the DOL's findings in or about 2017 but failed to disclose this information to Plaintiff and other participants in Defendants' communications about the ESOP. Defendants did not disclose this information to participants in their communications about the ESOP in order to conceal their fiduciary violations.

CLASS ACTION COMPLAINT                16

95.     The Administrative Committee, as Plan Administrator, provided Plaintiff and other participants with a Summary Annual Report stating, *inter alia*, the value of Plan assets (i.e., the LinkUs stock held by the ESOP) each year from 2013 - 2018. In or about October of each year, Plaintiff received the Summary Annual Report for the prior year.

96.     The Summary Annual Reports for 2013 – 2018 reported the same inflated value for the Plan's LinkUs stock as reported on the Plan's Form 5500s.

97.     Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. For at least the Plan Years 2016, 2017 and 2018, Defendants Warren, Horacio Guzman and Morris were aware of the DOL's finding that the valuation of LinkUs stock for the ESOP Transaction and subsequent years had been inflated, in part because the valuations failed to account for the warrants issued to certain Selling Shareholder Defendants. Nevertheless, Defendants Warren, Horacio Guzman and Morris, in their capacity as the members of the Administrative Committee, caused Summary Annual Reports containing inflated values for the ESOP's LinkUs stock to be sent to Plaintiff and other participants. Defendants Warren, Horacio Guzman and Morris knew that the value for LinkUs stock reported on the Summary Annual Reports for 2016, 2017 and 2018 were inflated but caused the misleading Summary Annual Reports to be sent to Plaintiff and other participants to conceal the fiduciary violations arising from the ESOP Transaction.

98.     In addition, the Administrative Committee and the members of the Committee had a fiduciary obligation to determine whether any additional explanation of the financial information furnished in the Summary Annual Report was necessary to fairly summarize the annual report.

99.     The Administrative Committee, as Plan Administrator, provided Plaintiff and other participants with annual benefit statements stating, *inter alia*, the value of their ESOP accounts (i.e., the LinkUs stock held in their individual accounts) each year from 2013 – 2018. In or about October of each year, Plaintiff received her individual benefit statement for the prior year.

100.     The annual benefit statements for 2013 – 2018 reported the same inflated value for the Plan's LinkUs stock as reported on the Plan's Form 5500s.

CLASS ACTION COMPLAINT          17

101.   Plaintiff's 2019 annual benefit statement (received in 2020) showed a higher opening share balance for January 1, 2019 than her 2018 annual benefit statement (received in 2019) showed as a closing share balance for December 31, 2018. Neither Plaintiff's 2019 annual benefit statement nor any other communications from LinkUs notified her of the adjustment to her share balance or provided an explanation for the change.

102.   Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. In or about 2019, Defendants revised the terms of the ESOP Transaction to convince the U.S. Department of Labor to end its investigation of the ESOP and the ESOP Transaction. Defendants' revisions to the terms of the ESOP Transaction resulted in the allocation of additional shares to Plaintiff and other participants. Defendants' revisions to the terms of the ESOP Transaction did not cure the fiduciary violations in the ESOP Transaction. Defendants were not successful in convincing the U.S. Department of Labor to end its investigation of the ESOP and the ESOP Transaction. Defendants failed to disclose the revision to the terms of the ESOP Transaction to Plaintiff or other participants. The 2019 revision to the terms of the ESOP Transaction was the last action which constituted a part of the ESOP Transaction and/or the last opportunity for Urbach and the Director Defendants to cure the fiduciary violations in the ESOP Transaction.

103.   Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. For at least the Plan Years 2016, 2017 and 2018, Defendants Warren, Horacio Guzman and Morris were aware of the DOL's finding that the valuation of LinkUs stock for the ESOP Transaction and subsequent years had been inflated, in part because the valuations failed to account for the Selling Shareholder Defendants' warrants. Nevertheless, Defendants Warren, Horacio Guzman and Morris, in their capacity as the members of the Administrative Committee, caused annual benefit statements containing inflated values for the ESOP's LinkUs stock to be sent to Plaintiff and other participants. Defendants Warren, Horacio Guzman and Morris knew that the value for LinkUs stock reported on the annual benefit statements for 2016, 2017 and 2018 were inflated but caused the misleading

CLASS ACTION COMPLAINT                18

annual benefit statements to be sent to Plaintiff and other participants to conceal the fiduciary violations arising from the ESOP Transaction.

104. Plaintiff received annual ESOP individual benefit statements for 2013 – 2018. Plaintiff received the annual benefit statement for each year during the following year (e.g., Plaintiff received her 2013 ESOP benefit statement in 2014). Plaintiff's individual benefit statements for 2013 – 2018 used the same inflated value for LinkUs shares as LinkUs reported on the 2013–2018 Form 5500s.

105. The inflated values for LinkUs stock reported on the Plan's Summary Annual Reports and individual benefit statements would have led a reasonable person to believe that the valuation of LinkUs stock for the ESOP Transaction had been proper.

106. Plaintiff relied on her annual ESOP benefit statements and Summary Annual Reports for an accurate valuation of her ESOP shares and believed that the ESOP was providing her a valuable retirement benefit because of the values reported on her annual ESOP benefit statements and Summary Annual Reports.

107. On November 18, 2020, Defendant LinkUs submitted a Voluntary Fiduciary Correction Program (VFCP) application signed by Defendant Warren to the U.S. Department of Labor. LinkUs's VFCP application represented that the value of the ESOP's LinkUs shares was inflated every year from 2013 – 2018 because Defendants used the non-diluted value of LinkUs shares rather than the diluted value of LinkUs shares which accounted for the warrants held by Selling Shareholder Defendants. In the VFCP application, LinkUs represented the following data for the 2013 – 2019 ESOP valuations:

| Plan Year | Enterprise FMV | Non-Diluted $/Sh | Diluted $/Sh | Participants |
|---|---|---|---|---|
| 2013 | $18,836,736 | $8.07 | $5.05 | 289 |
| 2014 | $21,360,000 | $9.15 | $5.73 | 264 |
| 2015 | $22,637,000 | $9.70 | $6.07 | 243 |
| 2016 | $25,345,000 | $10.86 | $6.80 | 221 |
| 2017 | $29,157,000 | $12.49 | $7.82 | 236 |

CLASS ACTION COMPLAINT                    19

| 2018 | $35,782,000 | $15.33 | $9.60 | 290 |
| 2019 | $37,511,000 | $16.07 | $10.06 | 286 |

108. By letter dated April 2, 2021, the U.S. Department of Labor rejected LinkUs's VFCP application.

## IV.  CLASS ACTION ALLEGATIONS

109. Plaintiff brings these claims as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of all participants in the ESOP from April 30, 2013, or any time thereafter who vested under the terms of the Plan and those participants' beneficiaries. Excluded from the Class are Defendants and their immediate family; any member of the Administrative Committee; the directors of LinkUs (including any of its subsidiaries or affiliates), or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

110. **Numerosity.** The members of the Class are so numerous that joinder of all members is impracticable. According to the 2019 Form 5500 filed with the Department of Labor, which is the most recent available Form 5500, as of December 31, 2019, there were over 500 participants, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP.

111. **Commonality.**  The issues of liability are common to all members of the Class and are capable of common answers as those issues primarily focus on Defendants' acts (or failure to act). Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

a. Whether the ESOP purchased LinkUs stock from the Selling Shareholder Defendants for more than adequate consideration in the ESOP Transaction;

b. Whether Urbach engaged in a prudent and good faith investigation of the proposed purchase of LinkUs stock by the ESOP in the ESOP Transaction and the revision to the ESOP Transaction in 2019;

c. Whether Urbach breached a fiduciary duty to ESOP participants by causing the ESOP to purchase LinkUs stock in 2013 for more than fair market value;

CLASS ACTION COMPLAINT                    20

d.      Whether the Director Defendants breached their fiduciary duties by failing to adequately monitor Urbach and the Administrative Committee;

e.      Whether the Administrative Committee and its members caused misleading Summary Annual Reports and annual benefit statements to be sent to ESOP participants; and

f.      The amount of losses suffered by the ESOP as a result of Defendants' statutory violations and/or other appropriate remedial and equitable relief.

112.    **Typicality.**  Plaintiff's claims are typical of those of the Class because their claims arise from the same events, the ESOP's purchase of LinkUs stock and the failure of Defendants to take remedial action to correct the fiduciary violations relating to the ESOP's purchase of LinkUs stock. Specifically, Plaintiff challenges the legality of a plan-wide transaction, whereby stock is allocated to all participants' accounts based on the same valuation of the Company. As a result, Plaintiff, like other ESOP participants in the Class, has received less in her ESOP account based on the same purchase price of LinkUs stock, and continues to suffer such losses because Defendants have failed to correct the overpayment by the ESOP, and both the ESOP and the Company are burdened with excessive debt.

113.    Because Plaintiff seeks relief on behalf of the ESOP pursuant to § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), her claims are not only typical of, but the same as, a claim under § 502(a)(2) brought by any other Class member.

114.    **Adequacy.**  Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff does not have any interests antagonistic to or in conflict with those of the Class. She understands that this matter cannot be settled without the Court's approval.

115.    Defendants do not have any unique defenses that would interfere with Plaintiff's representation of the Class.

116.    Plaintiff has retained counsel competent and experienced in complex class actions, ERISA and employee benefits litigation, and with particular experience and expertise in ESOP litigation.

117.    **Rule 23(b)(1)(A).** Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(A). Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with

CLASS ACTION COMPLAINT                    21

respect to all similarly situated participants and to act in the best interests of their plans and participants. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the ESOP.

118.    **Rule 23(b)(1)(B).** Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(B).  Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants fulfilled their fiduciary obligations to the ESOP or engaged in prohibited transactions with respect to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the ESOP even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

119.    **Rule 23(b)(2).**  Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief and is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

120.    **Rule 23(b)(3).** Additionally, and alternatively, class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to all Class members predominate over any questions affecting individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this action. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class. Plaintiff and all Class members have been harmed by the ESOP paying more than fair market value for LinkUs stock in the ESOP Transaction. As relief and any

recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

121. A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims are brought on behalf of the ESOP, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire ESOP. The losses suffered by individual Class members are small compared to the expense and burden of individual prosecution of this action. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the ESOP.

122. The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

a) The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

b) No other litigation concerning this controversy has been filed by any other members of the Class.

c) This District is the most desirable location for concentrating the litigation for reasons that include (but are not limited to) the following: (i) the ESOP is administered in part in this District, (ii) certain Defendants can be found in this District, and (iii) certain non-party witnesses are located in this District.

123. The names and addresses of the Class are available from the ESOP. Notice will be provided to all members of the Plaintiff Class to the extent required by Rule 23.

## COUNT I
**Prohibited Transaction in Violation of ERISA § 406(a), 29 U.S.C. § 1106(a)**
**(Against Urbach and Selling Shareholder Defendants)**

124. Plaintiff incorporates the preceding paragraphs as though set forth herein

125. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a participant to seek appropriate relief under ERISA § 409, 29 U.S.C. § 1109. Pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities,

CLASS ACTION COMPLAINT                    23

obligations, or duties imposed upon fiduciaries by [subchapter I of ERISA, which includes ERISA's fiduciary duties and prohibited transaction rules] shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

126.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a participant to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or the terms of the plan.

127.    ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," (B) "lending of money or other extension of credit between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

128.    ERISA § 3(14), 29 U.S.C. § 1002(14), defines a "party in interest" to include any fiduciary … of such employee benefit plan", and "an employee, officer or director or a 10 percent or more shareholder" of an employer covered by the Plan. 29 U.S.C. § 1002(14)(A), (H).

129.    Each of the Selling Shareholder Defendants were employees, officers or directors of the Company, or shareholders with a 10% or more interest in the Company, or relatives of such persons at the time of the sale of their stock to the ESOP in the ESOP Transaction. As such, the Selling Shareholder Defendants are "parties in interest" within the meaning of ERISA § 3(14) as to the ESOP Transaction.

130.    Each of the Selling Shareholder Defendants other than Josephina Guzman were employees, officers or directors of the Company, or shareholders with a 10% or more interest in the Company, or relatives of such persons at the time of the 2019 revision to the ESOP Transaction. As such, the Selling Shareholder Defendants other than Josephina Guzman are "parties in interest" within the meaning of ERISA § 3(14) as to the 2019 revision to the ESOP Transaction.

131. As Trustee, Urbach caused the ESOP to engage in prohibited transactions in the ESOP Transaction and the 2019 revision to the ESOP Transaction in violation of ERISA §§ 406(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1106(a)(1)(A), (B) and (D).

132. Urbach caused the Plan to acquire LinkUs stock from the Selling Shareholder Defendants and with the proceeds of a loan that was used to pay the Selling Shareholder Defendants and also caused the Plan to revise the terms of the ESOP Transaction with the Selling Shareholder Defendants.

133. As the fiduciary who caused the ESOP to engage in the prohibited transactions, Urbach is personally liable to make good to the ESOP any losses to the plan resulting from the prohibited transactions and shall be subject to such other equitable or remedial relief as the Court may deem appropriate.

134. The Selling Shareholder Defendants knew that the valuation for the ESOP Transaction was based on inflated revenue, earnings and cash flow projections that did not adequately take into consideration the Company's dependence on Dish, adverse trends for Dish and the Pay TV industry, and potential wage and hour liability. The Selling Shareholder Defendants other than Josephina Guzman knew that the revision to the ESOP Transaction in 2019 was based on an inflated valuation of LinkUs and knew that the DOL had identified additional problems with the valuation of LinkUs in the ESOP Transaction.

135. As such, the Selling Shareholder Defendants were aware of sufficient facts that the ESOP Transaction and 2019 revision to the ESOP Transaction constituted a prohibited transaction with parties in interest. As parties in interest, the Selling Shareholder Defendants are liable for the violations of ERISA § 406(a)(1)(A), (B) and (D), 29 U.S.C. § 1106(a)(1)(A), (B) and (D).

136. Plaintiff seeks appropriate equitable relief from the Selling Shareholder Defendants as parties in interest, including a surcharge remedy, rescission, imposition of a constructive trust on any proceeds received (or which are traceable thereto), and the disgorgement of any ill-gotten gains they received in connection with the ESOP Transaction.

## COUNT II
### Prohibited Transaction in Violation of ERISA § 406(b), 29 U.S.C. § 1106(b)
### (Against Director Defendants and Urbach)

CLASS ACTION COMPLAINT                25

137. Plaintiff incorporates the preceding paragraphs as though set forth herein.

138. ERISA § 406(b), 29 U.S.C. § 1106(b), prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account[.]" 29 U.S.C. § 1106(b)(1).

139. As alleged above, LinkUs delegated its duties as Plan Administrator to the Administrative Committee and its members, Defendants Warren, Horacio Guzman and Morris, who were also selling shareholders.

140. As such, Defendants Warren, Horacio Guzman and Morris were and continue to be fiduciaries of the ESOP before and after the ESOP Transaction and the 2019 revision to the ESOP Transaction.

141. The Director Defendants dealt with the ESOP assets in their own interest within the meaning of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

142. ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants[.]" 29 U.S.C. § 1106(b)(2).

143. All Director Defendants had fiduciary control over the ESOP and acted as an adverse party to the ESOP in the ESOP Transaction and the 2019 revision to the ESOP Transaction within the meaning of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

144. ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), prohibits a plan fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3).

145. All Director Defendants received consideration for their own personal accounts from the Trustee and/or LinkUs in the ESOP Transaction and the 2019 revision to the ESOP Transaction within the meaning of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

146. All Director Defendants violated ERISA § 406(b)(1)-(3), 29 U.S.C. § 1106(b)(1)-(3), for which they are liable as fiduciaries to restore the losses caused by these prohibited transactions, to disgorge profits or other appropriate remedial and equitable relief.

147. Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Urbach

CLASS ACTION COMPLAINT                    26

received consideration for his own personal account from LinkUs – fees and an indemnification agreement – as Trustee for the Plan in the ESOP Transaction and following the ESOP Transaction, in violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

148.    ERISA § 408(e), 29 U.S.C. § 1108(e), provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. The burden is on the fiduciary and the parties in interest to demonstrate that conditions for the exemption are met.

149.    ERISA § 3(18)(B) defines adequate consideration as "the fair market of the asset as determined in good faith by the trustee or named fiduciary." 29 U.S.C. § 1002(18)(B). ERISA § 3(18)(B) requires that the fiduciary or party in interest show that the price paid reflected the fair market value of the asset at the time of the transaction, and that the fiduciary conducted a good faith, prudent investigation to determine the fair market value of the asset.

150.    Urbach caused the ESOP to purchase LinkUs stock from the Selling Shareholder Defendants in the ESOP Transaction for more than fair market value and the 2019 revision to the ESOP Transaction was not fair to the ESOP. The Director Defendants knew that the ESOP was paying more than fair market value in the ESOP Transaction and that the terms of the 2019 revision to the ESOP Transaction were not fair to the ESOP.

**COUNT III**
**Breach of Fiduciary Duties Under ERISA §§ 404(a)(1)(A) and (B),**
**29 U.S.C. §§ 1104(a)(1)(A) and (B)**
**(Against Urbach)**

151.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

152.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires that a plan fiduciary act "for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan."

153.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires that a plan fiduciary act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

CLASS ACTION COMPLAINT                    27

154.    In the context of a sale of the sponsoring company/employer to an ESOP, the duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to ensure that the ESOP and its participants pay no more than adequate consideration for the ESOP's assets and the participants' account in the ESOP.

155.    Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulations.

156.    Urbach was required to undertake an appropriate and independent investigation of the fair market value of the LinkUs stock before approving the ESOP Transaction in order to fulfill his fiduciary duties. Among other things, Urbach was required to conduct a thorough and independent review of any "independent appraisal," to make certain that reliance on any and all valuation experts' advice was reasonably justified under the circumstances of the ESOP Transaction; to investigate the credibility of the management assumptions and earnings projections underlying the valuation; and to make an honest, objective effort to read and understand the valuation reports and opinions and question the methods and assumptions that did not make sense

157.    In addition, Urbach was required to assert claims on the ESOP's behalf and seek to cure or remedy any fiduciary violations in the ESOP Transaction or the 2019 revision to the ESOP Transaction.

158.    An appropriate investigation would have revealed that the valuation used for the ESOP Transaction and the price ultimately paid by the ESOP did not reflect the fair market value of the LinkUs stock purchased by the ESOP.

159.    An appropriate investigation would have revealed that it was imprudent for the ESOP to take on excessive debt.

160.    An appropriate investigation would have revealed that purchasing the Company based on an equity valuation of $41,565,447 was not in the best interest of the ESOP participants.

161. An appropriate investigation would have revealed that the 2019 revision to the ESOP Transaction was not fair to the ESOP.

162. Urbach learned of the DOL investigation in or about 2016 and learned in or about 2017 of the DOL's findings that the ESOP paid more than fair market value for LinkUs stock in the ESOP Transaction and that prior valuations of LinkUs stock had been inflated, in part because they failed to account for the warrants issued to certain Selling Shareholder Defendants. After learning of the DOL's findings, Urbach was obligated to take appropriate action to remedy the ESOP's overpayment for LinkUs stock, including, if necessary, by filing a lawsuit on behalf of the ESOP. However, Urbach took no action to remedy the fiduciary violations in the ESOP Transaction.

163. Urbach had a fiduciary obligation to disclose the DOL investigation and the DOL's findings to ESOP participants. Urbach, however, failed to disclose the DOL investigation and the DOL's findings to ESOP participants.

164. By causing the ESOP to engage in the ESOP Transaction and the 2019 revision to the ESOP Transaction, failing to restore the losses caused thereby, and failing to take remedial action following the DOL investigation and findings, Urbach breached his fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A), (B), and caused losses to the ESOP and the individual retirement accounts of the participants in the ESOP.

**COUNT IV**
**Breach of Fiduciary Duty in Violation of ERISA §§ 404(a)(1)(A) and (B)**
**29 U.S.C. §§ 1104(a)(1)(A) and (B)**
**(Against the Director Defendants, Administrative Committee and LinkUs)**

165. Plaintiff incorporates the preceding paragraphs as though set forth herein.

166. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires that a plan fiduciary act "for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan."

167. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires that a plan fiduciary act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

CLASS ACTION COMPLAINT                    29

168.   ERISA § 404(a)(1)(A) and (B) provide that any fiduciary with the power to appoint and/or remove other fiduciaries has an obligation to undertake an appropriate investigation that the appointed fiduciary is qualified to serve in the position as fiduciary and to monitor the appointed fiduciary to ensure that he/she remains qualified to act as fiduciary and is acting in compliance with the terms of the Plan and in accordance with ERISA.  If the appointed fiduciary has violated or continues to violate ERISA, the monitoring fiduciary must remove the appointed fiduciary and attempt to restore any losses to the plan caused by the ERISA violations.

169.   The Director Defendants acting on behalf of LinkUs appointed Urbach as Trustee for the ESOP. Thus, LinkUs and the Director Defendants had a duty to monitor Urbach.

170.   The Director Defendants acting on behalf of LinkUs appointed the members of the Administrative Committee. Thus, LinkUs and the Director Defendants also had a duty to monitor the Administrative Committee.

171.   The Director Defendants and LinkUs breached their duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) &(B), because they failed to monitor Urbach and the Administrative Committee to ensure that the ESOP did not engage in the ESOP Transaction given the inflated stock price, and/or that the ESOP paid no more than fair market value for Company stock in the Transaction, that Urbach took remedial action after the ESOP Transaction, that Urbach took remedial action as a result of the DOL investigation, and/or that Urbach took remedial action as a result of the 2019 revision to the ESOP Transaction.

172.   Defendants Administrative Committee, Horacio Guzman, Warren and Morris received and reviewed copies of the 2013–2018 valuation reports and breached their duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) &(B), because they failed to make sure that Urbach and the Plan's service providers used the correct share value for Plan administration and annual reports filed with the U.S. Department of Labor and provided to Plan participants.

173.   The fiduciary duty of loyalty requires a fiduciary to provide complete and accurate material information to Plan participants. The Administrative Committee, Warren, Horacio Guzman and Morris had a fiduciary duty to inform participants about the DOL investigation and the DOL's findings so that participants could protect their interests in the ESOP but failed to do so.

174.    The Administrative Committee, Warren, Horacio Guzman and Morris had a fiduciary duty to determine whether additional information should be provided in the ESOP's Summary Annual Reports to fairly summarize the financial information in the Reports. As of in or about 2017, the Administrative Committee, Warren, Horacio Guzman and Morris should have included additional information for the ESOP's Summary Annual Reports explaining that the reported asset value for the ESOP (i.e., the equity value of the ESOP's LinkUs stock) was incorrect due to the failure to account for the warrants issued to certain Selling Shareholder Defendants and other valuation errors and also should have explained that the asset values reported in prior Summary Annual Reports were inflated. In addition, the 2019 Summary Annual Report should have informed participants that their ESOP share counts had been changed and provided an explanation. The Administrative Committee, Warren, Horacio Guzman and Morris failed to include any of this information in the Summary Annual Reports or other communications to ESOP participants.

175.    The fiduciary duties of loyalty and prudence required Defendants Warren, Horacio Guzman and Morris to respond truthfully and accurately to document requests and other information requests in the course of the DOL investigation and take appropriate remedial action based on the DOL's findings. Defendants Warren, Horacio Guzman and Morris breached their fiduciary duties by providing the DOL with fabricated ESOP Committee minutes and otherwise failing to respond truthfully and accurately to DOL inquiries during the DOL's investigation and failing to take appropriate remedial action in light of DOL's findings.

## COUNT V
### Co-Fiduciary Liability Under ERISA §§ 405(a)(1)–(3), 29 U.S.C. §§ 1105(a)(1)–(3)
### (Against Director Defendants)

176.    Plaintiff incorporates the preceding paragraphs as if set forth herein.

177.    ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1) provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan" [] "if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary[.]"

178.    ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2) provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan" [] "if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach[.]"

179.    ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3) provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan" [] "if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

180.    Because the Director Defendants held management and leadership positions within the Company and were members of the Administrative Committee, (i) they were involved in preparing the revenue, earnings and cash flow projections underlying the valuation relied upon by Urbach that resulted in the ESOP overpaying for the Company stock it purchased; (ii) they knew about the unfavorable trends for Dish and the Pay TV industry and the failure of the financial projections to adequately reflect these problems; (iii) they knew that the incorrect financial projections they prepared would be used to determine the value the ESOP would pay for Company stock and thus cause the ESOP to overpay; (iv) they knew that LinkUs was providing fabricated documents to the DOL in response to DOL document requests; and (v) they enabled Urbach to breach his duties by using incorrect share values from 2013–2018 for Plan administration and reports provided to the Department of Labor and ESOP participants.

181.    The Director Defendants and Urbach learned of the DOL investigation in or about 2016 and learned in or about 2017 of the DOL's findings regarding the ESOP's overpayment for LinkUs stock in the ESOP Transaction. The Director Defendants knew that Urbach had failed to take any action to remedy the fiduciary violations in the ESOP Transaction despite the DOL's findings. Indeed, the Director Defendants failed to disclose the DOL investigation or the DOL's findings to participants. The Director Defendants failed to take any reasonable efforts to remedy Urbach's failure to take remedial action or the fiduciary violations of the other Director Defendants.

182.   Thus, the Director Defendants and each of them knowingly participated in the fiduciary violations of Urbach in the ESOP Transaction, enabled Urbach's fiduciary violations in the ESOP Transaction, and failed to remedy the fiduciary violations in the ESOP Transaction alleged above, and they knew that Urbach's acts and omissions violated ERISA. In addition, each of the Director Defendants knowingly participated in the fiduciary violations of the other Director Defendants alleged above, enabled such fiduciary violations, and knew that the other Director Defendants' actions violated ERISA. As such, under ERISA § 405(a), 29 U.S.C. § 1105(a), the Director Defendants and each of them are liable as co-fiduciaries for the ESOP's losses as a result of Urbach's and the other Director Defendants' fiduciary violations.

## COUNT VI
### Violation of ERISA § 410 & Breach of Fiduciary Duty under ERISA § 404(a)
### (Against LinkUs, Urbach, Warren, Horacio Guzman and Morris)

183.   Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

184.   ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [ERISA Part IV] shall be void as against public policy."  As Part IV of ERISA includes ERISA §§ 404, 405, and 406, 29 U.S.C. §§ 1104, 1105 and 1106, any provision that attempts to relieve a fiduciary of liability is void pursuant to ERISA § 410(a), unless there is an exception or exemption. No such exception or exemption is applicable here.

185.   The Department of Labor Regulations promulgated under ERISA § 410, 29 C.F.R. § 2509.75-4, renders "void any arrangement for indemnification of a fiduciary of an employee benefit plan by the plan" because it would have "the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations."

186.   ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

CLASS ACTION COMPLAINT                33

187.    To the extent that Urbach's engagement agreements with LinkUs (or any other agreements) attempt to relieve Urbach of his responsibility or liability to discharge his fiduciary duties or to have LinkUs (an ESOP-owned company) and thereby the ESOP be responsible for his liability or breaches, Defendant Urbach's engagement agreements (or other agreements) are void as against public policy.

188.    Section 7.03 of the Plan Document provides that LinkUs will indemnify any member or former member of the Plan Administrator, any person or persons who was, is or becomes an officer or director of LinkUs, or an employee of LinkUs to whom LinkUs has delegated any portion of the power, duty or responsibility to act on behalf of the Plan Administrator, against any and all expenses, including attorneys' fees, liabilities, losses and judgments and amounts paid or to be paid in settlement with respect to any threatened suit or proceeding or investigation or inquiry. The Plan Document further provides that the indemnification provision does not relieve the indemnified person from any liability to the extent that a court of competent jurisdiction from which no appeal can be taken enters a final judgment that such person's actions or omissions were the result of breach of fiduciary duty, gross negligence, or willful misconduct. This exception to indemnification, however, does not apply, *inter alia*, to attorneys' fees or liability for engaging in a prohibited transaction.  Therefore, the Plan's indemnification provision is void as against public policy.

189.    To the extent that Defendants would agree to exercise of such a provision that is void against public policy under ERISA § 410, Defendants breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and beneficiaries and (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

190.    Any indemnification provision in agreements between Defendants Urbach, Warren, Horacio Guzman or Morris and LinkUs or other agreements or instruments governing the

relationship between Defendants Urbach, Warren, Horacio Guzman or Morris and LinkUs should be declared void ab initio and should be reformed to strike or modified accordingly.

191.    Defendants Urbach, Warren, Horacio Guzman or Morris should be ordered to disgorge any indemnification payments made by LinkUs, an employer participating in the ESOP and/or the ESOP, plus interest.

## V.  PRAYER FOR RELIEF

Plaintiff, on behalf of herself and the Class, prays that judgment be entered against Defendants on each Count and that the Class be awarded the following relief:

A.    Declare that Defendants other than Defendant Josephina Guzman have each breached their fiduciary duties under ERISA;

B.    Declare that Defendants Urbach and the Selling Shareholder Defendants have each engaged in prohibited transactions in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), through the ESOP Transaction;

C.    Declare that the Director Defendants are liable as co-fiduciaries for Urbach's breaches of fiduciary duty and each other's breaches of fiduciary duty;

D.    Enjoin Urbach, the Administrative Committee and the Director Defendants from further violations of their fiduciary responsibilities, obligations and duties;

E.    Remove Urbach as the Trustee of the ESOP and/or bar Urbach from serving as a fiduciary of the ESOP in the future;

F.    Remove the Director Defendants as members of the Administrative Committee and/or bar the Director Defendants as serving as fiduciaries of the ESOP in the future;

G.    Appoint a new independent fiduciary to manage the ESOP and order the costs of such independent fiduciary be paid for by Defendants;

H.    Order each fiduciary found to have violated ERISA, including breaching his/her/its fiduciary duties to the ESOP, to jointly and severally pay such amount necessary to restore all the losses resulting from their breaches and to disgorge all profits made through use of assets of the ESOP;

CLASS ACTION COMPLAINT                    35

I.      Order Defendants to provide all accountings necessary to determine the amounts Defendants must remit to the ESOP to restore losses and to disgorge any profits fiduciaries obtained from the use of ESOP assets or other violations of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106;

J.      To the extent necessary, issue an injunction or order creating a constructive trust into which all ill-gotten gains, fees and/or profits paid to any of the Defendants in violation of ERISA shall be placed for the sole benefit of the ESOP's participants and beneficiaries.  This includes, but is not limited to, the ill-gotten gains, fees and/or profits paid to any of the Defendants that have been wrongly obtained as a result of breaches of fiduciary duty or prohibited transactions or other violations of ERISA;

K.      Order pursuant to ERISA § 206(d)(4) that any amount to be paid to the ESOP accounts of the Class can be satisfied by using or transferring any breaching fiduciary's ESOP account in the Plan (or the proceeds of that account) to the extent of that fiduciary's liability;

L.      Order Defendant Urbach to disgorge any fees he received in conjunction with his services as Trustee for the Plan in the ESOP and thereafter, as well as any earnings and profits thereon;

M.      Enjoin Defendants from transferring or disposing of any of the proceeds they received from the ESOP Transaction to any person or entity which would prejudice, frustrate or impair the Plan participants' ability to recover the same;

N.      Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or order payment of fees and expenses to Plaintiff's counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

O.      Issue a preliminary and permanent injunction barring Defendants and each of them from seeking to enforce any indemnification agreement between Defendants and the ESOP or LinkUs; and declare that any such indemnification agreement violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void;

P.      Order Defendants and each of them to reimburse the ESOP, LinkUs or any participating employer in the ESOP for any money advanced by the ESOP or LinkUs or

CLASS ACTION COMPLAINT                    36

participating employer, respectively, under any indemnification agreement or other instrument between Defendants and the ESOP or LinkUs;

Q.    Order that Defendants and each of them provide appropriate equitable relief to the ESOP, including but not limited to forfeiting their ESOP accounts, rescission, surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

R.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23 with the named Plaintiff as class representative and her counsel as class counsel;

S.    Award pre-judgment interest and post-judgment interest; and

T.    Award such other and further relief that the Court determines that Plaintiff, the Plan and the Class are entitled to pursuant to ERISA § 502(a)(2) and/or § 502(a)(3), 29 U.S.C. § 1132(a)(2) and/or 1132(a)(3) or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and just.

DATED: October 12, 2021                    Respectfully Submitted,


By: ___/s/ Daniel Feinberg_____
        Daniel Feinberg (SBN No. 135983)
        Feinberg, Jackson, Worthman & Wasow LLP
        2030 Addison Street, Suite 500
        Berkeley, CA 94704
        Tel. (510) 269-7998
        Fax (510) 269-7994
        dan@feinbergjackson.com

        Gregory Y. Porter (*pro hac vice to be filed*)
        Ryan T. Jenny (*pro hac vice to be filed*)
        Bailey & Glasser, LLP
        1055 Thomas Jefferson St. NW, Ste. 540
        Washington, DC 20007
        Telephone: (202) 463-2101
        Facsimile: (202) 463-2103
        gporter@baileyglasser.com
        rjenny@baileyglasser.com

        Charles Trudrung Taylor (SBN No. 127105)
        Lang, Richert & Patch
        Fig Garden Financial Center

CLASS ACTION COMPLAINT                    37

5200 North Palm Avenue, Fourth Floor
Fresno, CA 93704
Phone: 559.228.6700
Fax: 559.228.6727

*Counsel for Plaintiff and the Proposed Class*