THEODORE M. BECKER (admitted *pro hac vice*)
tbecker@mwe.com
MCDERMOTT WILL & EMERY LLP
444 W. Lake Street
Chicago, IL 60606-0029
Telephone:    (312) 372-2000
Facsimile:    (310) 984-7700

JULIAN L. ANDRE (SBN 251120)
jandre@mwe.com
MCDERMOTT WILL & EMERY LLP
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
Telephone:    (310) 277-4110
Facsimile:    (310) 277-4730

Attorneys for Defendants
HORACIO GUZMAN, DANT MORRIS, JON WARREN,
JOSEPHINA GUZMAN, THE ADMINISTRATIVE
COMMITTEE OF THE LINKUS HOLDINGS INC.
EMPLOYEE STOCK OWNERSHIP PLAN, AND LINKUS
HOLDINGS, INC.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA DAILEY, on behalf of the LinkUs Holdings, Inc, Employee Stock Ownership Plan and on behalf of all other persons similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>HORACIO GUZMAN, DANT MORRIS, JON WARREN, JOSEPHINA GUZMAN, JAMES URBACH, THE ADMINISTRATIVE COMMITTEE OF THE LINKUS HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN, and LINKUS HOLDINGS, INC.,<br><br>    Defendants. | Case No.  1:21-CV-01502-DAD-EPG<br><br>**LINKUS DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hearing:**<br>Date:  April 5, 2022<br>Time:  9:30 a.m.<br>Courtroom:  5, 7th Floor<br><br>**Hon. Dale A. Drozd** |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on Tuesday, April 5, 2022 at 9:30 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Dale A. Drozd, located at the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, CA 93721, defendants Horacio Guzman, Dant Morris, Jon Warren, Josephina Guzman, The Administrative Committee of the LinkUs Holdings, Inc. Employee Stock Ownership Plan, and LinkUs Holdings, Inc. (the "LinkUs defendants") will, and hereby do, move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing with prejudice Counts I, II, IV, V, and VI of the complaint against them.

This motion is made on the following grounds:

1.      Plaintiff's claims in Counts I, II, IV, and V are barred by ERISA's six-year statute of repose, 29 U.S.C. § 1113(1), because the ESOP transaction on which these claims are based closed on April 30, 2013, more than six years before plaintiff filed her complaint on October 12, 2021.

2.      To the extent plaintiff will argue that her claims in Counts I, II, IV, and V are tolled by ERISA's fraud and concealment exception, 29 U.S.C. § 1113, she fails to allege that any of the LinkUs defendants took "affirmative steps" to conceal the existence of the 2013 ESOP transaction or any potential breach of fiduciary duties in connection with the 2013 ESOP transaction.  She also fails to plead her allegations of fraud and concealment with the required particularity for fraud claims under Federal Rule of Civil Procedure 9(b).

3.      Plaintiff's claims in Counts I, II, IV, and V also fail to state plausible claims for relief.  These claims are derivative of the claims against defendant James Urbach, and plaintiff has failed to state plausible claims against Urbach.  Her derivative claims against the LinkUs defendants should therefore be dismissed.  Additionally, in Count I, plaintiff fails to state a plausible claim for relief under ERISA § 502(a)(3) because she has not plausibly alleged that the LinkUs defendants had actual or constructive knowledge of Urbach's alleged ERISA violations,

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

and she cannot establish that she is entitled to appropriate equitable relief under *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000).

4.      Plaintiff's claims in Counts IV and V fail to state plausible claims to the extent she bases them on conduct that took place after 2015.  None of the disclosure violations plaintiff has alleged in these counts constitute independent breaches of fiduciary duties or would subject the LinkUs defendants to co-fiduciary liability.

5.      Plaintiff's claim in Count VI regarding allegedly improper indemnification provisions is derivative of the failed claims in Counts I, II, IV, and V.  Because these claims fail, Count VI fails as well.

This motion is made following the conference of counsel pursuant to Judge Drozd's Civil Standing Order 1.C, which took place on February 17, 2022.  After discussing their respective positions on the LinkUs defendants' motion, the parties were not able to come to an agreement or resolution.

This motion is based on this notice of motion and motion, the attached memorandum of points and authorities, the Declaration of Julian L. André filed in support ("André Decl.") and the exhibits thereto, the files and records in this action, and such further argument and evidence this Court may permit.

**MCDERMOTT WILL & EMERY LLP**

DATED:  February 21, 2022        By:    */s/ Julian L. André*
                                         Theodore M. Becker
                                         Julian L. André

                                         Attorneys for Defendants
                                         HORACIO GUZMAN, DANT MORRIS,
                                         JON WARREN, JOSEPHINA GUZMAN,
                                         THE ADMINISTRATIVE COMMITTEE
                                         OF THE LINKUS HOLDINGS, INC
                                         EMPLOYEE STOCK OWNERSHIP PLAN,
                                         AND LINKUS HOLDINGS, INC.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)
CASE NO. 3:20-CV-06894 WHO

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| MEMORANDUM OF POINTS AND AUTHORITIES | | 1 |
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 3 |
| | A. ESOPs Generally | 3 |
| | B. The 2013 ESOP Transaction and the LinkUs ESOP | 4 |
| | C. Plaintiff's Claims Against the LinkUs Defendants | 6 |
| | D. Post-Transaction Events | 7 |
| III. | LEGAL STANDARDS | 8 |
| IV. | PLAINTIFF'S CLAIMS ARE BARRED BY ERISA'S SIX-YEAR STATUTE OF REPOSE | 9 |
| | A. Counts I, II, IV, and V Fall Outside ERISA's Six-Year Statute of Repose | 9 |
| | B. Plaintiff Has Failed to Plead that ERISA's Fraud and Concealment Exception to the Six-Year Statute of Repose Applies | 10 |
| | 1. Plaintiff Does Not Allege that Defendant Josephina Guzman Engaged in Any Conduct that Could Constitute Fraudulent Concealment | 11 |
| | 2. Plaintiff's Prohibited Transaction Claims Are Time-Barred Because Plaintiff Had Actual Knowledge the 2013 ESOP Transaction Occurred | 12 |
| | 3. Plaintiff Does Not Allege the LinkUs Defendants Engaged in Affirmative Conduct Sufficient to Trigger the Fraudulent Concealment Exception | 14 |
| | 4. Plaintiff Fails to Satisfy the Rule 9(b) Particularity Pleading Standard for Fraud and Concealment | 16 |
| | C. The Alleged "2019 Revision" Was Not A Part of the 2013 ESOP Transaction and Does Not Revive Plaintiff's Time-Barred Claims | 19 |
| V. | COUNTS I, II, IV, AND V ALSO FAIL TO STATE CLAIMS AGAINST THE LINKUS DEFENDANTS | 20 |
| VI. | TO THE EXTENT PLAINTIFF BASES HER COUNT IV AND V CLAIMS ON CONDUCT AFTER 2015, PLAINTIFF FAILS TO STATE A CLAIM | 23 |
| VII. | COUNT VI SHOULD BE DISMISSED AS DERIVATIVE OF PLAINTIFF'S OTHER FAILED CLAIMS | 25 |

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

VIII.   CONCLUSION ................................................................................................. 25

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

LINKUS DEFENDANTS' MOTION TO
DISMISS; MEMORANDUM OF POINTS
AND AUTHORITIES

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Pac. Enterprises*,
950 F.2d 611 (9th Cir. 1991), *as amended on reh'g* (Jan. 23, 1992) ...................................... 24

*Appvion, Inc. Ret. Savs. & ESOP v. Buth*,
No. 18-cv-1861, 2020 WL 4284150 (E.D. Wis. July 27, 2020) ................................................ 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................. 8

*Barker v. American Mobil Power Corp.*,
64 F.3d 1397 (9th Cir. 1995) ............................................................................................ *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................. 8

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ........................................................................................... 9, 16

*Chao v. Hall Holding Co., Inc.*,
285 F.3d 415 (6th Cir. 2002) ................................................................................................. 22

*DeFazio v. Hollister*,
636 F. Supp. 2d 1045 (E.D. Cal. 2009) ............................................................................ 11, 12

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.*,
No. 17-CV-07243-BLF, 2019 WL 6841222 (N.D. Cal. Dec. 16, 2019) ............................... 20

*Dellacava v. Painters Pension Fund*,
851 F.2d 22 (2d Cir.1988) ...................................................................................................... 24

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir.), *cert. denied*, 140 S. Ct. 223 (2019) ........................................... 21, 22

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983) ......................................................................................... 3, 21, 22

*Eddy v. Colonial Life Ins. Co. of America*,
919 F.2d 747 (D.C.Cir.1990) ................................................................................................. 24

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ................................................................................................................. 3

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) ................................................................................................................ 22

*Guenther v. Lockheed Martin Corp.*,
972 F.3d 1043 (2020) ........................................................................................................ *passim*

LINKUS DEFENDANTS' MOTION TO
DISMISS; MEMORANDUM OF POINTS
AND AUTHORITIES

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

*Harris Trust & Savings Bank v. Salomon Smith Barney*,
    530 U.S. 238 (2000) ................................................................................................ 1, 20, 21

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012) ............................................................................................. 9

*Horne v. Harley-Davidson, Inc.*,
    660 F. Supp. 2d 1152 (C.D. Cal. 2009) .............................................................................. 13

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
    140 S. Ct. 768 (2020) ......................................................................................................... 13

*Kanawi v. Bechtel Corp.*,
    590 F. Supp. 2d 1213 (N.D. Cal. 2008) .............................................................................. 10

*McFarland v. Memorex Corp.*,
    493 F. Supp. 631 (N.D. Cal. 1980) ..................................................................................... 18

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Ben. Plan*,
    577 U.S. 136 (2016) ........................................................................................................... 21

*Moyle v. Liberty Mut. Ret. Benefit Plan*,
    263 F. Supp. 3d 999 (S.D. Cal. 2017) ................................................................................ 20

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) .................................................................................................. 18

*Olivo v. Elky*,
    646 F.Supp.2d 95 (D.C. Cir. 2009) .................................................................................... 20

*Perez v. Commodity Control Corp.*,
    No. 16-cv-20245, 2017 WL 1293619 (S.D. Fla., Mar. 7, 2017) ........................................ 22

*Pisciotta v. Teledyne Industries, Inc.*,
    91 F.3d 1326 .................................................................................................................... 12

*Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*,
    919 F.2d 1216 (7th Cir.1990) ............................................................................................. 10

*Sanders v. Brown*,
    504 F.3d 903 (9th Cir. 2007) ............................................................................................... 8

*Sereboff v. Mid Atl. Med. Servs., Inc.*,
    547 U.S. 356 (2006) ...................................................................................................... 21, 22

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .............................................................................................. 18

*Sulyma v. Intel Corp. Inv. Pol'y Comm.*,
    909 F.3d 1069 (9th Cir. 2018), *aff'd,* 140 S. Ct. 768 (2020) ....................................... 12, 13

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .............................................................................................. 19

McDermott Will & Emery LLP
Attorneys At Law

- iv -

LINKUS DEFENDANTS' MOTION TO
DISMISS; MEMORANDUM OF POINTS
AND AUTHORITIES

*Terraza v. Safeway Inc.*,
    241 F. Supp. 3d 1057 (N.D. Cal. 2017) ....................................................................... 9

*In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*,
    242 F.3d 497 (3d Cir. 2001) ..................................................................................... 10

*Yamauchi v. Cotterman*,
    84 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................... 10, 14, 15

*Zavala v. Kruse-Western, Inc.*,
    398 F. Supp. 3d 731 (E.D. Cal. 2019) .......................................................... 21, 22

**Statutes**

ERISA § 3 (18)(B); 29 U.S.C. § 1002(18)(B) ............................................................. 20

ERISA § 104; 29 U.S.C. § 1024 ............................................................................. 5, 17

ERISA § 406(a)(1); 29 U.S.C. § 1106(a)(1) ................................................................. 6

ERISA § 406(b); 29 U.S.C. § 1106(b) ......................................................................... 7

ERISA § 408(e)(1); 29 U.S.C. § 1108(e)(1) ............................................................... 20

ERISA § 413; 29 U.S.C. § 1113 ............................................................................ 1, 19

ERISA § 413(1); 29 U.S.C. § 1113(1) .......................................................................... 1

ERISA § 413(2); 29 U.S.C. § 1113(2) ........................................................................ 12

Tax Reform Act of 1976, § 803(h), 90 Stat. 1590 ........................................................ 3

**Other Authorities**

29 C.F.R. § 2520.104b-10 ...................................................................................... 6, 24

*ESOP Nuts and Bolts*, National Center for Employee Ownership, *available at*
    http://www.esopinfo.org/how-esops-work/ ............................................................... 3

*How an Employee Stock Ownership Plan Works*, National Center for Employee
    Ownership, August 24, 2020, *available at* http://www.nceo.org/articles/esop-
    emoloyee-stock-ownership-plan ............................................................................... 3

*Start Here: ESOP Transactions*, National Center for Employee Ownership, May
    29, 2019, *available at* http://www.nceo.org/article/start-here-esop-transactions ................ 3, 4

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

LINKUS DEFENDANTS' MOTION TO
DISMISS; MEMORANDUM OF POINTS
AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Plaintiff's Employee Retirement Income Security Act of 1974 ("ERISA") claims against the LinkUs defendants arise from an April 2013 transaction in which the LinkUs Holdings, Inc. Employee Stock Ownership Plan (the "ESOP") purchased 100% of the stock of LinkUs Holdings, Inc. ("LinkUs") from its former shareholders (the "2013 ESOP Transaction").  Plaintiff claims that the LinkUs stock was overvalued at the time of the 2013 ESOP Transaction, and that the LinkUs defendants, along with the ESOP's independent trustee, co-defendant James Urbach ("Urbach"), therefore violated ERISA's "prohibited transaction" provisions and breached their fiduciary duties.  Her claims must be dismissed because they are barred by the applicable statue of repose and fail to state plausible claims upon which relief can be granted.

*First,* Plaintiff's claims are all barred by ERISA's six-year statute of repose.  29 U.S.C. § 1113.  Any potential claims relating to the 2013 ESOP Transaction expired no later than April 2019, more than two years before plaintiff filed the instant complaint.  This is apparent from the face of the complaint, and plaintiff has failed to specifically plead that the six-year statute of repose does not apply or should be tolled.

In a futile attempt to salvage her time-barred claims, plaintiff pleads unsupported and baseless allegations scattered throughout her complaint in an apparent attempt to argue that ERISA's "fraud and concealment" exception to the six-year statute of repose applies.  It does not.  Plaintiff's allegations come nowhere close to satisfying ERISA's fraud and concealment exception, which has been strictly construed by the Ninth Circuit.  *See generally Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1401 (9th Cir. 1995); *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1057 (9th Cir. 2020).  Plaintiff does not and cannot plead that any of the LinkUs defendants took "affirmative steps" to conceal the existence of the 2013 ESOP Transaction or any potential breach of fiduciary duties in connection with the 2013 ESOP Transaction, as required under Ninth Circuit law.  Most of plaintiff's allegations are completely separate from the 2013 ESOP Transaction.  Plaintiff alleges the LinkUS defendants purportedly failed to disclose certain information, but a failure to disclose information does not constitute

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

fraud and concealment nor toll the statute of limitations. Additionally, plaintiff cannot argue that the underlying fiduciary breaches themselves constitute fraud or concealment because under Ninth Circuit precedent separate affirmative acts of fraud and concealment are required.

To the extent plaintiff intends to rely on the fraud and concealment exception, plaintiff must plead fraud with particularity under Federal Rule of Civil Procedure 9(b). She has not done so. Instead, plaintiff repeatedly asserts that her conclusory allegations will "likely have evidentiary support after a reasonable opportunity for further investigation and discovery," which as a matter of law is insufficient under Rule 9(b). Plaintiff does not identify any facts to support her "will likely have evidentiary support" allegations. Plaintiff's wishful thinking does not satisfy Rule 9(b) or toll the statute of limitations.

In an apparent last-ditch effort to avoid ERISA's six-year statute of repose, plaintiff also alleges that defendants added shares to her ESOP account in 2019 to "revise" the 2013 ESOP Transaction. Based on this purported revision, plaintiff then appears to claim that the 2013 ESOP Transaction actually continued for an additional six years. Any argument that the purported 2019 revision allows plaintiff to raise time-barred claims regarding the 2013 ESOP Transaction is absurd and would effectively vitiate the six-year statute of repose.

*Second,* plaintiff has failed to plausibly allege any claim upon which relief can be granted. Plaintiff has failed to assert facts sufficient to support her time-barred prohibited transaction claims in Counts I and II. None of plaintiff's alleged disclosure violations constitute independent breaches of the LinkUs defendants' alleged fiduciary duties, as she claims in Count IV, or would subject the LinkUs defendants to co-fiduciary liability, as she claims in Count V.

Contrary to plaintiff's allegations, in the nine years since the 2013 ESOP Transaction, LinkUs has performed well financially and the ESOP has amassed significant value for its employee participants. And plaintiff's complaint itself makes clear that any potential errors relating to the administration of the ESOP were fully disclosed and corrected. This Court should dismiss plaintiff's claims.

LINKUS DEFENDANTS' MOTION TO
DISMISS; MEMORANDUM OF POINTS
AND AUTHORITIES

McDermott Will & Emery LLP
Attorneys At Law

## II.     BACKGROUND

### A.     ESOPs Generally

An ESOP is a "bold and innovative method… of bringing about stock ownership by all corporate employees." *Fifth Third Bancorp v. Dudenhoeffer,* 573 U.S. 409, 416 (2014) (citing Tax Reform Act of 1976, § 803(h), 90 Stat. 1590). Employees in a company with an ESOP can build wealth by working because the value of their accounts depends on whether the company succeeds. *See ESOP Nuts and Bolts*, Nat'l Ctr. Emp. Ownership, http://www.esopinfo.org/how-esops-work/, last visited Feb. 17, 2022. For these reasons, Congress has incentivized the creation of ESOPs and "has written into law 'its interest in encouraging' their use." *Dudenhoeffer*, 573 U.S. at 416; *see also Donovan v. Cunningham*, 716 F.2d 1455, 1466 (5th Cir. 1983) (Congress has repeatedly expressed its intent to encourage the formation of ESOPs by passing legislation granting such plans favorable treatment, and has warned against judicial and administrative action that would thwart that goal).

ESOPs are a type of benefit plan authorized by ERISA whose primary investment is the stock of the plan participants' employer. *Dudenhoeffer*, 573 U.S. at 416. ESOPs typically acquire their employer stock from the company's existing shareholders, who are usually the founders of the business. *See How an Employee Stock Ownership Plan Works*, Nat'l Ctr. Emp. Ownership, https://www.nceo.org/articles/esop-employee-stock-ownership-plan#:~:text=In%20an%20ESOP%2C%20a%20company,it%20to%20repay%20the%20loan, last visited Feb. 17, 2022 (hereinafter "NCEO"). In these types of ESOP transactions, an independent trustee represents the interests of the ESOP, and decides whether, and on what price and terms, the ESOP will acquire the former shareholders' stock. *See See Start Here: ESOP Transactions*, Nat'l Ctr. Emp. Ownership, *at* http://www.nceo.org/article/start-here-esop-transactions, last visited Feb. 17, 2022. The ESOP trustee typically engages an independent valuation advisor to assist with the assessment of the transaction. *See id*.

Because ESOPs generally do not have assets of their own when initially created, the ESOP generally acquires the stock through a loan from the company. *See* NCEO. The company's employees do not invest any of their own money for the ESOP to acquire the stock,

- 3 -

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

are not obligated to provide any money to repay the ESOP loan, and have no personal liability if there is a default on the loan. *See ESOP Nuts and Bolts*. Frequently, ESOP transactions are leveraged, meaning the company uses external debt to fund its loan to the ESOP. *Id*. In order for the ESOP to pay back the loan, the company typically makes tax-deductible contributions to the ESOP, and the ESOP makes payment back to the company using the contributions. *See* NCEO. While there is a balance outstanding on the loan, the ESOP's stock is held in encumbrance. *Id*. As the ESOP pays down the loan, stock is released from encumbrance and allocated to eligible employees' individual accounts. *Id*.

### B.     The 2013 ESOP Transaction and the LinkUs ESOP

LinkUs is a regional service provider to dish. Compl. ¶ 25. Among other things, LinkUs installs and maintains dish equipment in certain regions of the Western United States. *Id*. Plaintiff's claims arise from an April 30, 2013 transaction during which LinkUs established an ESOP and the ESOP acquired 100% of LinkUs's stock from its former shareholders. *Id*. at ¶ 48. These former shareholders are: defendants Jon Warren, LinkUs's Chief Financial Officer and a member of LinkUs's Board of Directors; Horacio Guzman, LinkUs's Chief Executive Officer and a member of LinkUs's Board of Directors; Dant Morris, a member of LinkUs's Board of Directors; and Josephina Guzman, Mr. Guzman's former spouse. *Id*. at ¶¶ 18-20.[1] Ms. Guzman was not an employee, officer, or director of LinkUs in 2013 and never has been. *Id*. at ¶¶ 20, 130.

The LinkUs Board of Directors appointed Urbach, an independent trustee unaffiliated with LinkUs, to serve as the ESOP's trustee for purposes of the 2013 ESOP Transaction. *Id*. at ¶ 17. Urbach had "sole and exclusive authority to negotiate the terms of the 2013 ESOP Transaction on the ESOP's behalf." *Id*. at ¶ 5. Urbach engaged a team of advisors to assist him in assessing the merits of the transaction, including a valuation advisor, who prepared a valuation of the LinkUs stock which Urbach used to negotiate the purchase price of the 2013 ESOP Transaction. *Id*. at ¶ 55. As is standard practice in ESOP transactions, LinkUs management

---

[1]  The complaint refers to Horacio Guzman, Morris, and Warren collectively as the "Director defendants," and the Guzmans, Morris, and Warren collectively as the "Selling Shareholder defendants."

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

prepared detailed financial information about LinkUs's business, including financial projections, and provided it to Urbach and his advisors for purposes of their analysis. *Id*. at ¶¶ 55-57. After completing his analysis, Urbach approved the 2013 ESOP Transaction and it closed on April 30, 2013. *Id*. at ¶ 48.

After the 2013 ESOP Transaction closed, the LinkUs Board of Directors appointed the defendant Administrative Committee as the plan's administrator in charge of the day-to-day administration and management of the ESOP. *Id*. at ¶ 69. LinkUs also created an informal ESOP Committee to act as a liaison to employees to keep them informed about the ESOP. *Id*. at ¶ 71. The ESOP Committee was not a fiduciary to the ESOP and had no role in the ESOP Transaction. *Id*. at ¶ 73.

Like most ESOPs, the fair market value of the LinkUs stock was not only determined for purposes of the 2013 ESOP Transaction. After the 2013 ESOP Transaction, the stock was valued annually. The annual valuation was communicated to ESOP participants so they could see the current value of their ESOP accounts. *Id*. at ¶ 87. The value of an ESOP participant's ESOP account was calculated by taking into consideration the annual valuation of the stock and the amount of stock that had been allocated to her account (participants are allocated stock in accordance with a formula that is based on their compensation).

The Administrative Committee had no responsibility, discretion, or oversight over the annual valuation process. Rather, the ESOP's independent trustee, Urbach, had the sole and exclusive authority to value the stock annually and is required to engage an independent appraiser to conduct the annual valuation. *Id*. at ¶ 89. Like all companies, regardless of whether they have ESOPs, the price of LinkUs stock could fluctuate year to year based on external forces outside the control of the company or others factors specific to LinkUs.

The LinkUs ESOP, like all employee benefit plans, was required to prepare certain annual disclosures. First, the ESOP was required to provide annual disclosures to the DOL. These disclosures were filed publicly on Form 5500 and contained certain required information about the plan, including, among other things, the value of the plan's assets and a copy of the plan's audited financial statements. The Forms 5500 were not required to be provided to plan

McDermott Will & Emery LLP
Attorneys At Law

- 5 -

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

participants.  *See* 29 U.S.C. § 1024 (annual report must be filed with the Secretary of the Department of Labor, but only *summaries* of the annual reports must be provided to participants). Because the Forms 5500 were not required to be provided to plan participants, ERISA's regulations required that the plan administrator provide to participants summary annual reports that contain certain required information, including, among other things, the value of the plan's assets.  *See* 29 C.F.R. § 2520.104b-10.  The summary annual report was meant to be a pared-down version of the Form 5500 that was easy for participants to understand.  The Administrative Committee, as the ESOP's plan administrator, provided summary annual reports to participants each year from 2013 to the present, as required.  *Id*. at ¶ 95.  Additionally, the Administrative Committee provided participants with annual benefit statements that included the annual valuation of the ESOP's stock, the number of shares that had been allocated to the participants' ESOP account, and the total value of the participants' ESOP account.  *Id*. at ¶ 99.

### C. Plaintiff's Claims Against the LinkUs Defendants[2]

Plaintiff is a former employee of LinkUs.  *Id*. at ¶ 16.  The crux of plaintiff's complaint is that the ESOP allegedly paid too much for the stock that it acquired in the 2013 ESOP Transaction.  Specifically, plaintiff alleges Urbach relied on an "unreliable," inflated valuation report prepared by his independent valuation advisor when determining the price the ESOP would pay.  *Id*. at ¶ 53.  According to plaintiff, the valuation was unreliable because it allegedly did not adequately account for LinkUs's dependence on its contract with dish, unfavorable industry trends, potential liability for wage and hour violations, and certain warrants received by the sellers in the transaction.  *Id*. at ¶¶ 55-57.

As a result of the alleged overpayment in the 2013 ESOP Transaction, plaintiff brings a number of claims against the LinkUs defendants:

- In Count I, plaintiff alleges that the 2013 ESOP Transaction was a prohibited transaction under ERISA § 406(a)(1)(A), (B), and (D) with parties in interest.  29 U.S.C. §

[2] The LinkUs defendants do not admit or accept as true many of the allegations in plaintiff's complaint.  The LinkUs defendants do not refute these allegations in this motion only because of the Rule 12(b)(6) standard that factual allegations must be assumed as true. The LinkUs defendants reserve their rights to challenge all factual allegations in the complaint.

McDermott Will & Emery LLP
Attorneys At Law

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

1106(a)(1).  Plaintiff alleges the 2013 ESOP Transaction was not exempt from ERISA's prohibited transaction rules under an exemption for acquisition of employer securities because the ESOP did not acquire the stock for adequate consideration.  Plaintiff alleges that Urbach, as the fiduciary that "caused" the 2013 ESOP Transaction, is primarily responsible for the prohibited transaction, but she also seeks to hold Warren, Morris, and the Guzmans, as the counterparties to the 2013 ESOP Transaction, derivatively liable for "knowingly participating" in the 2013 ESOP Transaction as parties in interest and seeks "appropriate equitable relief" from Warren, Morris, and the Guzmans for  their "knowing participation" under ERISA § 502(a)(3).  *Id*. at ¶¶ 124-136.

- In Count II, plaintiff alleges that the 2013 ESOP Transaction was a prohibited self-dealing transaction under ERISA § 406(b), 29 U.S.C. 1106(b), and seeks to hold Warren, Morris, and Horacio Guzman liable for this alleged prohibited self-dealing.  Compl. at ¶¶ 137-150.

- In Count IV, plaintiff alleges that LinkUs, the Administrative Committee, and Warren, Morris, and Horacio Guzman, acting on the behalf of LinkUs as directors or acting on behalf of the Administrative Committee as Committee members, breached their ERISA fiduciary duties of prudence and loyalty in connection with the 2013 ESOP Transaction.  Plaintiff alleges LinkUs and the Administrative Committee failed to monitor Urbach and ensure that the ESOP paid no more than fair market value for the stock in the 2013 ESOP Transaction and in subsequent post-transaction valuations.  *Id*. at ¶¶ 165-175.

- In Count V, plaintiff alleges that Warren, Morris, and Horacio Guzman breached their co-fiduciary duties under ERISA § 405 in connection with the 2013 ESOP Transaction.  Plaintiff alleges Warren, Morris, and Horacio Guzman enabled Urbach to breach his fiduciary duties in connection with the 2013 ESOP Transaction by providing him with overstated financial projections that would cause an overvaluation of the LinkUs stock.  *Id*. at ¶¶ 176-182.

**D.    Post-Transaction Events**

In addition to her allegations about the 2013 ESOP Transaction, the complaint includes allegations about various post-transaction events unrelated to the 2013 ESOP Transaction.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff pleads a number of these allegations with the disclaimer that they are "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id*. at ¶¶ 55-57, 79, 94, 97, 102, 103.  According to plaintiff, sometime in 2016, the Department of Labor launched an investigation into the 2013 ESOP Transaction, and sometime in 2017, issued findings that in its opinion, the 2013 ESOP Transaction was overvalued.  *Id*. at ¶¶ 76, 81.  The ESOP's 2018 Form 5500 included a note that stated:

> The Plan has been undergoing an audit by the U.S. Department of Labor (DOL) Employee Benefit Security Administration (EBSA) and the EBSA has issued findings that in its opinion the Plan overpaid for the stock in the initial transaction due to their view of the valuation issued by the Trustee's valuation advisor.  The Trustee engaged a second valuation company with considerable ESOP valuation experience to perform an independent secondary valuation to gain further insight as to the fair market value of the Company at the transaction date and received an opinion that the Plan did not overpay.  The Trustee and the Company are negotiating with the EBSA and believe this matter will be concluded with little or no negative material impact to the Company, or the Plan.

*Id*. at ¶ 84, *see also* André Decl., Ex. A (2018 Form 5500).  Plaintiff also alleges that, in 2020, plaintiff and all ESOP participants received a notice from LinkUs that stated that their ESOP stock had been overvalued for the *post-transaction* years 2013-2018, that the ESOP trustee had not discovered the error until 2020 when the 2019 valuation was being prepared, and that corrective action would be taken.  Compl. at ¶ 88.  Plaintiff alleges that additional shares were allocated to her ESOP account in 2019 to account for this error.  *Id*. at ¶¶ 101-102.

## III.   LEGAL STANDARDS

When determining whether to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6), courts evaluate whether a plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must plead facts that are sufficient to push the claims "across the line from conceivable to plausible." *Id*.  This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citation omitted).  A complaint's "factual content" must be more than "merely consistent with" a defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Conduct that is "compatible with, but indeed [is] more likely explained by, lawful" behavior does not state a claim.  *Id*. at 680.

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

On a Rule 12(b)(6) motion, a court may take judicial notice of a document on which the complaint relies if the document "is central to the plaintiff's claim[s]" asserted in the complaint, and the "authenticity of the document" cannot be reasonably disputed. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). Courts routinely take judicial notice of authentic, ERISA-related documents at the motion to dismiss stage when the complaint "incorporates" or "necessarily relies on those documents." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1067 (N.D. Cal. 2017).

When ERISA's fraud and concealment exception to the six-year state of repose is at issue, Plaintiff bears the burden to plead the existence of this exception. *See Guenther*, 972 F.3d at 1057 (citing *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012)) ("plaintiff bears the burden of pleading and proving" that affirmative acts sufficient to toll the statute occurred). Additionally, the fraud and concealment exception allegations must be plead with particularity to satisfy Rule 9(b)'s requirements. *See Appvion, Inc. Ret. Savs. & ESOP v. Buth*, 745 F.Supp.3d 910, 930 (E.D. Wis. 2020) ("Like all fraud claims," fraud or concealment under section 1113 "must be pled with particularity in accordance with Rule 9(b)"). Under Rule 9(b), plaintiff's fraud claims must "identify the who, what, when, where, and how of the misconduct charged." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

## IV.   PLAINTIFF'S CLAIMS ARE BARRED BY ERISA'S SIX-YEAR STATUTE OF REPOSE

### A.   Counts I, II, IV, and V Fall Outside ERISA's Six-Year Statute of Repose

Section 413 of ERISA provides that claims for breach of fiduciary duties must be brought before the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

Plaintiff's complaint was filed on October 12, 2021. Thus, under ERISA's six-year statute of repose, plaintiff cannot assert any ERISA claims based on conduct occurring before October 12, 2015. Counts I, II, IV, and V against the LinkUs Defendants allege ERISA violations that arise from the 2013 ESOP Transaction, which plaintiff concedes closed on April 30, 2013, Compl. ¶ 48, well more than six years before plaintiff brought this action. These claims have clearly expired and are time-barred.

**B.      Plaintiff Has Failed to Plead that ERISA's Fraud and Concealment Exception to the Six-Year Statute of Repose Applies**

Although plaintiff's claims are time-barred on the face of the complaint, plaintiff may nevertheless assert that ERISA's fraud and concealment exception to the six-year statute of repose applies. Plaintiff "bears the burden of pleading" facts sufficient to establish the fraud and concealment exception. *Guenther*, 972 F.3d at 1057. She has failed to do so.

Under the fraud or concealment exception to ERISA's six-year statute of repose plaintiff "must establish '*affirmative conduct* upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe he did not have a claim for relief.'" *Guenther*, 972 F.3d at 1057 (quoting *Barker*, 64 F.3d at 1402) (emphasis added). The "facts constituting the claim for breach of fiduciary duty alone cannot also serve as the basis for fraud or concealment—otherwise, the exception would swallow the rule." *Guenther*, 927 F.3d at 1057 n. 10. "Instead, a defendant must take affirmative steps 'beyond the breach itself [with] the effect of concealing the breach from its victims.'" *Id.* (citing *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 242 F.3d 497, 503 (3d Cir. 2001)). To trigger the exception, a defendant must actively "misrepresent the significance of facts the beneficiary is aware of (fraud) or ... hide facts so that the beneficiary never becomes aware of them (concealment)." *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1401 (9th Cir. 1995) (quoting *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.,* 919 F.2d 1216, 1220 (7th Cir.1990)). "Mere failure to disclose" certain facts is insufficient to establish that a defendant "hid" a breach from plaintiff sufficient to constitute "affirmative concealment." *Guenther*, 927 F.3d at 1057; *see also Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1226 (N.D. Cal. 2008) ("active concealment… is more than merely a failure to

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

McDermott Will & Emery LLP
Attorneys At Law

disclose"); *Yamauchi v. Cotterman*, 84 F.Supp.3d 993, 1006 (N.D. Cal. 2015) ("affirmative steps of concealment, as opposed to mere failure to disclose, is necessary to toll the running of the statute of limitations").

To toll the statute against a particular defendant, plaintiff must allege facts establishing "affirmative conduct upon the part of *the defendant* which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." *Barker,* 64 F.3d at 1402 (emphasis in original). Allegations of fraudulent concealment against one defendant does not toll the statute as to other defendants. *Id.* Rather, plaintiff must allege particularized facts that show how *each defendant* participated in the fraud or concealment. *Id.* at 1401. The statute of limitations is not tolled as to claims asserted against defendants who did not actually engage in the acts designed to conceal the alleged fiduciary breaches. *DeFazio v. Hollister*, 636 F. Supp. 2d 1045, 1062 (E.D. Cal. 2009).

Plaintiff has not and cannot pled facts sufficient to meet the fraudulent concealment standard. Plaintiff did not specifically plead that the exception applies. The LinkUs defendants expect that in opposition to this motion plaintiff will cite to a number of unsupported allegations scattered throughout the complaint to argue that the exception applies. Those allegations are legally insufficient to toll the statute of repose.

### 1. Plaintiff Does Not Allege that Defendant Josephina Guzman Engaged in Any Conduct that Could Constitute Fraudulent Concealment

Plaintiff brings a single claim against Josephina Guzman in Count I, alleging that Ms. Guzman "knowingly participated" in the 2013 ESOP Transaction in violation of ERISA § 406(a). Plaintiff, however, has not alleged that Ms. Guzman participated in any actions other than the 2013 ESOP Transaction itself. Indeed, plaintiff admits that Ms. Guzman was not an employee, officer, or director of LinkUs. Compl. ¶¶ 20, 130, 134. Plaintiff alleges nothing to support her claim that the fraud and concealment exception tolls the statute of repose as to Ms. Guzman. Plaintiff cannot simply rely on allegations of fraudulent concealment by the other LinkUs defendants to toll the statute of repose as to the claims against Ms. Guzman. *See Barker,* 64 F.3d at 1402 (dismissing claims against defendants who were not employed by company during

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

alleged fraud and concealment). Rather, plaintiff must allege particularized facts that show how *each defendant*, including Ms. Guzman, participated in the fraud or concealment. *Id*. at 1401-02. Plaintiff's failure to do so warrants dismissal of the sole claim against Ms. Guzman. *See DeFazio*, 636 F. Supp. 2d at 1062 (statute of limitations cannot be tolled as to claims asserted against defendants who did not actually engage fraud or concealment).

2. <u>Plaintiff's Prohibited Transaction Claims Are Time-Barred Because</u>
<u>Plaintiff Had Actual Knowledge the 2013 ESOP Transaction Occurred</u>

Plaintiff's purported fraud and concealment allegations cannot salvage her prohibited transaction claims against defendants Warren, Morris, and Horacio Guzman. Counts I and II allege that these defendants engaged in prohibited transactions in violation of ERISA §§ 406(a) and 406(b). Compl. ¶¶ 124-146. Plaintiff cannot rely on the fraud and concealment exception to resuscitate these expired claims because plaintiff's complaint confirms that she had actual knowledge that the 2013 ESOP Transaction had taken place by 2014 at the very latest.

ERISA's three-year statute of limitations bars claims "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. 1113(2). In order for a plaintiff to have "actual knowledge" sufficient to start the clock on the three-year limitations period, she must have been "actually aware" of the "facts constituting the breach" and the "nature of the alleged breach." *Sulyma v. Intel Corp. Inv. Pol'y Comm*., 909 F.3d 1069, 1075-76 (9th Cir. 2018), *aff'd,* 140 S. Ct. 768 (2020). In other words, the limitation period starts to run "once the plaintiff has sufficient knowledge to be alerted to the particular" ERISA *claim* alleged. *Id*. at 1076. When the underlying ERISA claim is "a section 1106 case the plaintiff need only be aware that the defendant has engaged in a prohibited transaction, because knowledge of the transaction is all that is necessary to know that a prohibited transaction has occurred." *Id.* at 1075; *see also Guenther*, 972 F.3d at 1054, n.5 (quoting *Sulyma*, 909 F.3d at 1075, and reaffirming that "knowledge of the transaction is all that is necessary to know that a prohibited transaction has occurred").

Thus, under *Sulyma*, plaintiff need only be aware that the 2013 ESOP Transaction took place to start the three-year clock running on the prohibited transaction claims in Counts I and II.

- 12 -

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

A motion to dismiss based on the running of the statute of limitations may be granted where it is evident on the face of the complaint that the claim is barred and if the allegations would not permit the plaintiff to prove the statute was tolled. *Pisciotta v. Teledyne Industries, Inc.*, 91 F.3d 1326, 1331; *see also Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1157 (C.D. Cal. 2009). Disclosure of information to a plaintiff "strongly suggests that [she] gained knowledge of the disclosed information." *Guenther*, 972 F.3d at 1055 (citing *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 777 (2020)). And disclosure, combined with allegations that suggest plaintiff "viewed the relevant disclosures" and "took action in response to the information contained in them," is sufficient to show actual knowledge. *Sulyma*, 140 S. Ct. at 779.

Here, the allegations in plaintiff's own complaint demonstrates she had actual knowledge of the 2013 ESOP Transaction as early 2014, when she received her first ESOP benefit statement. Compl. ¶ 104. Indeed, plaintiff confirms that she reviewed and "relied" upon her annual ESOP benefit statements. *Id.* at ¶ 106. This yearly benefit statement, which contained "values for the ESOP's LinkUs stock," would have provided plaintiff with knowledge that the 2013 ESOP Transaction had taken place. *Id.* at ¶ 103. Thus, the annual benefit statements, and her alleged reliance on them, is sufficient to show she had actual knowledge of the 2013 ESOP Transaction. The three-year statute of limitations on plaintiff's Count I and II prohibited transaction claims started running sometime in 2014, when plaintiff received her annual benefit statement, and expired, at the latest, at the end of 2017.

Because plaintiff had actual knowledge in 2014 of the sole fact upon which her claim for relief would be based—that a prohibited transaction took place— she cannot invoke the fraud and concealment exception to toll her Count I and II prohibited transaction claims. Plaintiff does not allege that LinkUs engaged in any "affirmative conduct" or "steps to hide" the fact that the 2013 ESOP Transaction took place. *Guenther*, 972 F.3d at 1057 (citing *Barker*, 64 F.3d at 1402). Plaintiff's conclusory allegations of fraud and concealment are inapplicable to her prohibited transaction claims. *See Sulyma*, 909 F.3d at 1075 (contrasting the knowledge required for breach of fiduciary duty claims to the knowledge required for prohibited transaction claims)

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

- 13 -

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

3.    Plaintiff Does Not Allege the LinkUs Defendants Engaged in Affirmative Conduct Sufficient to Trigger the Fraudulent Concealment Exception

In their response, Plaintiff likely will cite to a number of allegations in her complaint to argue that the fraudulent concealment exception applies as to all of plaintiff's claims against the LinkUs defendants.  None of plaintiff's allegations are legally sufficient to establish that the LinkUs defendants engaged in affirmative steps to hide the alleged breaches of fiduciary duties.

Plaintiff's repeatedly alleges that LinkUs stock was overvalued during the 2013 ESOP Transaction, and she bases her claims on this.  But she does not allege that any of the LinkUs defendants took affirmative steps specifically designed to hide or conceal this overvaluation. Instead, plaintiff alleges a series of unconnected disclosure failures, many of which are contradicted by her own allegations.  Plaintiff does not explain with any of the required specificity how these alleged disclosure failures constituted a separate fraud designed to conceal the alleged overvaluation, how any of the defendants misrepresented or concealed information about the 2013 ESOP Transaction, or how any of the defendants actually mislead Plaintiff into believing there were no violations associated with the 2013 ESOP Transaction.

Plaintiff alleges that the sale price for the 2013 ESOP Transaction failed to adequately account for LinkUs's dependence on a single contract, unfavorable industry trends, and liability for wage and hour violations because the Director defendants allegedly were aware of these issues but did not fully disclose them to Urbach or misrepresented their significance.  *See* Compl. ¶¶ 8, 55-57.  These conclusory allegations do not constitute independent fraud or concealment and are insufficient to trigger the exception under Ninth Circuit law.  *See Guenther*, 927 F.3d at 1057 (fraud and concealment allegations must consist of something beyond the alleged breach itself); *Yamauchi*, 84 F. Supp. 3d at 1007 (offering proof of the underlying brief of fiduciary duty is not enough).

Plaintiff also alleges in a conclusory manner that all the defendants "intentionally concealed" from participants a purported DOL investigation into the valuation of the 2013 ESOP

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

Transaction and the DOL's alleged "findings" in that investigation.[3]  Compl ¶ 83.  Plaintiff's actual factual allegations, however, come nowhere close to intentional concealment.  In the very next paragraph, plaintiff *contradicts* her allegations of intentional concealment by alleging that Defendants *disclosed* the DOL investigation and findings in the 2018 Form 5500, a required annual disclosure that was filed *publicly*.  *Id*. at. ¶ 84; *see* André Decl. Ex. A at Financial Statements, p. 14.  Plaintiff nevertheless complains that the defendants never provided the Form 5500 directly to her or other participants and never made a separate disclosure about the DOL investigation to participants.  *Id*.  She alleges all defendants did so "in order to conceal their fiduciary violations" in connection with the 2013 ESOP Transaction.  *Id*. at ¶ 94.  But mere failures to disclose information "does not rise to the level of fraud and concealment" under Ninth Circuit precedent.  *Guenther*, 972 F.3d at 1057.  The LinkUs defendants' alleged failure to provide information to plaintiff that had already been disclosed publicly does not even amount to concealment, much less an *affirmative* act of concealment.  *See Yamauchi*, 84 F. Supp. 3d at 1006 ("The 'fraud or concealment' exception ... does not apply simply because an ERISA fiduciary fails to disclose material information.")

Plaintiff makes similar allegations that the "Director Defendants" provided "misleading" Summary Annual Reports to plaintiff and participants that overstated the value of the LinkUs stock post-transaction in 2016, 2017, and 2018.  Compl. ¶ 97.  Plaintiff alleges the "Director Defendants" did this to "conceal the fiduciary violations arising from the ESOP Transaction."  *Id*. She, however, does not allege the Summary Annual Reports included any intentionally false statements about the 2013 ESOP Transaction.  *See, e.g., Barker*, 64 F.3d at 1401 (holding that fraudulent concealment requires proof that defendants "made knowingly false misrepresentations with the intent to defraud"); *Guenther*, 927 F.3d at 1057 (finding that alleged misrepresentations

---

[3]  The LinkUs defendants strongly contest the accuracy of plaintiff's allegations regarding the DOL investigation, including the initial purpose of the investigation, the current status of that investigation, the merits of the investigation, the DOL's alleged findings in that investigation, and communications between LinkUs, Urbach, and the DOL in connection with that investigation. The LinkUs Defendants do not refute these allegations in this motion only because of the Rule 12(b)(6) standard that factual allegations must be assumed as true.  The LinkUs defendants reserve their rights to challenge all factual contentions regarding the DOL investigation alleged in the complaint.

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

were insufficient to establish fraudulent concealment exception). Moreover, plaintiff admits that the Director defendants corrected and *disclosed* the alleged valuation errors upon discovering them in 2019.[4] Compl. at ¶ 88; *see* André Decl. Ex. B (2019 Form 5500). The fact that the Director defendants, upon discovery of the overvaluations, voluntarily took corrective action and disclosed it shows exactly the *opposite* of active concealment.

Plaintiff also alleges that the Director defendants submitted to the DOL allegedly backdated and "fabricated" minutes of meetings held by the ESOP Committee—an entity that by plaintiff's own allegations, was *not a fiduciary to ESOP*, *had no role in the 2013 ESOP Transaction*, and had no responsibility for administration of the ESOP. Compl. ¶¶ 73, 79. These allegedly fabricated minutes have absolutely no connection to the 2013 ESOP Transaction or any of plaintiff's claims. Plaintiff does not and cannot claim that by allegedly backdating or fabricating the ESOP Committee minutes the LinkUs defendant concealed or hid any information from plaintiff relating to her claims.

> ### 4. Plaintiff Fails to Satisfy the Rule 9(b) Particularity Pleading Standard for Fraud and Concealment

Plaintiff's allegations not only are insufficient to satisfy the "fraud and concealment" exception as a matter of law, they also fail satisfy the Rule 9(b) particularity standard for fraud claims. Rule 9(b) requires plaintiff to plead the "who, what, where, why, and how" of her alleged fraud and concealment claims. *Cafasso*, 637 F.3d at 1055. She has not done so.

Instead, plaintiff's complaint is replete with conclusory allegations that the LinkUs defendants "mislead" her, which fail to identify the specific misleading statements, where those statements are located, and why and how any of the statements caused her to believe the 2013 ESOP Transaction was not overvalued. She makes conclusory allegations that the LinkUs defendants "intentionally concealed" information from her but does not allege what specific steps

---

[4] The LinkUs defendants strongly contest the accuracy of plaintiff's allegations regarding post-transaction alleged overvaluations. The LinkUs defendants do not refute these allegations in this motion only because of the Rule 12(b)(6) standard that factual allegations must be accepted as true. The LinkUs defendants reserve their rights to challenge all factual contentions regarding the alleged post-transaction valuations alleged in the complaint.

McDermott Will & Emery LLP
Attorneys At Law

defendants took to conceal information and when those acts happened.  And, she again contradicts herself by alleging that the defendants affirmatively *disclosed* much of the information she claims was intentionally concealed.  Compl. ¶¶ 84, 86; André Decl. Exs. A - B.

For example, plaintiff does not describe with any particularity how the LinkUs defendants caused the post-transaction Summary Annual Reports, Forms 5500, and annual benefit statements to "mislead" plaintiffs and participants about the 2013 ESOP Transaction.  The information reported in these documents were prepared by third parties, including the ESOP trustee's independent appraiser and the ESOP's accountant.  *See,e.g.*, Compl. ¶ 89.  Indeed, plaintiff's complaint concedes that Urbach and his own valuation advisor—not the LinkUs defendants— were responsible for the annual valuation reports that plaintiff claims were misleading.  *Id.* Plaintiff provides no explanation how the LinkUs defendants could have caused various third-party professionals to deliberately craft false and misleading information about the 2013 ESOP Transaction in the Summary Annual Reports or Forms 5500.

The Forms 5500 for 2018 and 2019, as well as the Summary Annual Reports for 2016, 2017, and 2018—the very documents that plaintiff alleges were "misleading"—contain straightforward financial information about the ESOP, including, among other things, the total value of the plan's assets—just as ERISA's regulations require.  *See* André Decl. Exs. A-E[5]; *see also* 29 U.S.C. § 1024 (setting forth requirements for annual reports (Forms 5500) and summary annual reports).  The notes to the ESOP's audited financial statements, prepared by independent third-party auditor Cuttone & Mastro and attached to the Forms 5500, include additional contextual information about the financial data.  *See* André Decl. Exs. A & B.  Plaintiff does not and cannot allege that any of these specific statements were false or misleading.

Plaintiff selectively quotes from a note to the 2018 audited financial statements regarding the DOL investigation in an attempt to mislead this Court.  Plaintiff alleges that this note states

---

[5]  The LinkUs defendants request that this Court take judicial notice of André Decl. Exhibits A through E, Forms 5500 and Summary Annual Reports for the ESOP.  Plaintiff cites these documents and relies on them to provide factual support for some of her allegations and has thus incorporated these documents into her complaint by reference.  *See supra* Section III; Compl. ¶¶ 84, 86, 97.

- 17 -

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

that the Plan "has been undergoing an audit by the [DOL]and the DOL issued findings that in its opinion the ESOP overpaid for the stock in the initial transaction," Compl. ¶ 84, but she omits the remaining portion of the note that states that "the Trustee engaged a second valuation company…to perform an independent secondary valuation…of the Company at the transaction date and received an opinion that the Plan *did not overpay*," and that "the Company [is] negotiating with EBSA and believes this matter will be concluded with little or no negative impact on the Company, or the Plan." André Decl. Ex. A, Financial Statements at 14 (emphasis added). Plaintiff's misleading and incomplete quotation makes it appear as if the DOL's investigation had closed with a finding of liability for the LinkUs defendants or Urbach, when in fact, the DOL had merely expressed its opinion, LinkUs and Urbach had refuted that opinion, obtained a second opinion supporting them, and were negotiating with DOL for a favorable resolution to the investigation. This Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). This Court should thus disregard plaintiff's misleading and incomplete allegations regarding the DOL investigation.

Plaintiff further alleges many of the critical, material allegations underlying the alleged fraud and concealment with the disclaimer that "the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *See* Compl. ¶¶ 55-57, 79, 94, 97, 102, 103. Such "information and belief" pleading does not satisfy Rule 9(b). *See McFarland v. Memorex Corp.*, 493 F. Supp. 631, 638 (N.D. Cal. 1980) (citing 2A J. Moore, Federal Practice P 9.03, at 9-26 (2d rev. ed. 1979)). If plaintiff "cannot allege even the barest details" specific to the fraud and concealment at issue, she "cannot rely on discovery to make [her] case." *Id*. at 639. Plaintiff has not identified any facts that would plausibly support her purported "belief" that such evidentiary support may one day exist. *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("a plaintiff who makes allegations on information and belief must state the factual basis for the belief").

Plaintiff also fails to allege the "who" with any specificity. Rather than alleging specific wrongdoing on each LinkUs defendant's part, what each LinkUs defendant did to further the

LINKUS DEFENDANTS' MOTION TO
DISMISS; MEMORANDUM OF POINTS
AND AUTHORITIES

alleged fraud and concealment, and how each LinkUs defendant carried out the fraud and concealment, plaintiff groups all of the defendants together without differentiating among each or attributing specific acts of fraudulent misconduct or concealment to each.  Plaintiff contends that defendants Warren, Morris, and Horacio Guzman collectively took actions as the "Director Defendants," and sometimes she alleges they acted as a group "on behalf of the Administrative Committee" or "on behalf of LinkUs."  *See, e.g.*, Compl. ¶¶ 55-57, 84, 97, 102, 103.  Rule 9(b) "does not allow a complaint to merely lump multiple defendants together," but instead "requires plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).  Plaintiff's failure to comply with this Rule 9(b) pleading requirement is even more troubling, given the Ninth Circuit's express holding that plaintiffs "may not generally use the fraudulent concealment by one defendant as a means to toll the statute of limitations against other defendants." *Barker*, 64 F.3d at 1402.  Plaintiff's failure to plead with particularity how each individual defendant engaged in affirmative acts of fraud or concealment is thus fatal to any argument that the statute of repose has been tolled.

**C.     The Alleged "2019 Revision" Was Not A Part of the 2013 ESOP Transaction and Does Not Revive Plaintiff's Time-Barred Claims**

In a last-ditch effort to keep her claims within the statute of repose, it appears plaintiff will argue that the 2013 ESOP Transaction, which closed on April 30, 2013, actually extended until 2019.  Specifically, plaintiff has alleged that "Defendants" added shares to her account and other participants' accounts, and by doing so "revised the terms" of the 2013 ESOP Transaction. *See, e.g.*, Compl. ¶¶ 102, 134, 135.  Adding the shares, plaintiff alleges, was the "last action which constituted a part of" the 2013 ESOP Transaction "and/or the last opportunity for Urbach and the Director Defendants to cure the fiduciary violations" in the 2013 ESOP Transaction.

Other than her conclusory allegation that the additional shares "revised" the 2013 ESOP Transaction, plaintiff fails to plead any facts to support any actual connection between the additional shares and the 2013 ESOP Transaction such that the additions could be considered "a part" of the 2013 ESOP Transaction or its final act.  Even if the additional shares were meant to

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

"revise" the 2013 ESOP Transaction[6], this act, as a matter of law, would not extend the date of the 2013 ESOP Transaction so that it was within the statute.  Courts have refused to define the "last opportunity to cure" in ERISA § 413 as "'[finding] a remedy,'" because do so would "extend a fiduciary's liability indefinitely as it is always possible to remedy a breach." *Moyle v. Liberty Mut. Ret. Benefit Plan*, 263 F. Supp. 3d 999, 1021 (S.D. Cal. 2017) (quoting *Olivo v. Elky*, 646 F.Supp.2d 95, 102 (D.C. Cir. 2009)).  The addition of shares into plaintiff's account in 2019 does not extend the date of the 2013 ESOP Transaction into 2019.

## V.   COUNTS I, II, IV, AND V ALSO FAIL TO STATE CLAIMS AGAINST THE LINKUS DEFENDANTS

Even if plaintiff's claims were timely, they still fail to state plausible claims for relief.  In Count I, Plaintiff attempts to bring a claim against the Selling Shareholder defendants for equitable relief under ERISA § 502(a)(3), but plaintiff has failed to adequately plead liability under *Harris Trust & Savings Bank v. Salomon Smith Barney*, 530 U.S. 238, 250 (2000).  In *Harris Trust*, the Supreme Court held that under limited circumstances a plaintiff may sue a nonfiduciary party-in-interest who *knowingly participates* in a prohibited transaction and seek "appropriate equitable relief" under ERISA § 502(a)(3).

Under *Harris Trust,* Plaintiff must plead facts that the LinkUs defendants had "actual or constructive knowledge" of Urbach's "unlawful" conduct regarding the 2013 ESOP Transaction. "[M]ere knowledge that a transaction is (or might be) 'prohibited' under ERISA § 406(a) does not mean that [a defendant] knew or should have known of any *wrongdoing*." *Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.*, No. 17-CV-07243-BLF, 2019 WL 6841222, at *6 (N.D. Cal. Dec. 16, 2019).  Rather, a prohibited transaction's "unlawfulness" depends entirely on whether it does *not* fall into one the many exemptions to ERISA's prohibited transaction rules found in ERISA § 408.  *Id*.  Here, the relevant exemption is the "adequate consideration"

---

[6] The LinkUs defendants strongly contest the accuracy of plaintiff's allegations regarding any additional shares added to her ESOP account in 2019.  The LinkUs defendants do not refute these allegations in this motion only because of the Rule 12(b)(6) standard that factual allegations must be accepted as true.  The LinkUs defendants reserve their rights to challenge all factual contentions regarding additional shares added to plaintiff's ESOP account alleged in the complaint.

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

exemption in § 408(e).  Under § 408(e), an ESOP may purchase "employer securities" from a "party in interest" as long as the ESOP acquires the securities for "adequate consideration."  29 U.S.C. § 1108(e)(1).  "Adequate consideration" is "the fair market value of the asset as determined in good faith by the trustee."  29 U.S.C. § 1002(18)(B).  An ESOP trustee accused of "overpaying" for stock has not breached fiduciary duties if the ESOP acquires the stock for adequate consideration.  *Donovan*, 716 F.2d at 1467.  "The adequate consideration standard focuses on the trustee's determination '*in good faith*' of the fair value," and as a result, focuses on the trustee's process in assessing fair market value.  *Id.* (quotations omitted).

Plaintiff pleads no facts that Josephina Guzman had actual knowledge of Urbach's process in vetting the 2013 ESOP Transaction.  Ms. Guzman was not a LinkUs officer or director, had no part in appointing Urbach as trustee, and was uninvolved in the 2013 ESOP Transaction aside from her role as a counterparty to the ESOP.  Compl. ¶¶ 20, 130.  Plaintiff also fails to plead facts from which this Court can even infer that Horacio Guzman, Warren, or Morris had actual knowledge of Urbach's process.  While plaintiff alleges these defendants provided information to Urbach for the 2013 ESOP Transaction, those allegations are all pled with the knowledge disclaimer.  Importantly, plaintiff does not plead that Urbach provided any information *to defendants* relating to Urbach's process.

In order to adequately plead a claim under § 502(a)(3) and *Harris Trust*, Plaintiff must also allege that the relief she seeks "is equitable rather than legal."  *Zavala v. Kruse-Western, Inc.*, 398 F. Supp. 3d 731, 740 (E.D. Cal. 2019), *see also Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 660 (9th Cir. 2009), *cert. denied*, 140 S. Ct. 223 (2019).  She has not done so.

The Supreme Court has held repeatedly that "the phrase 'appropriate equitable relief' in § 502(a)(3) 'is limited to those categories of relief that were *typically* available in equity[.]" *Depot*, 915 F.3d at 660 (quoting *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Ben. Plan*, 577 U.S. 136, 142 (2016)).  "The label a plaintiff attaches to a particular form of relief is not dispositive; rather, whether a remedy is legal or equitable 'depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought.'" *Zavala*, 398 F. Supp. 3d at 741 (quoting *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006)).

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

Plaintiff purports to be entitled to the equitable remedy of a "constructive trust/equitable lien on any ill-gotten gains." Compl., p. 36. But in order to be entitled to a constructive trust or an equitable lien, Plaintiff must identify specific "money or property identified as belonging in good conscience" to the ESOP that can "clearly be traced to particular funds or property in [the Selling Shareholder defendants'] possession." *Depot*, 915 F.3d at 661 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)) (internal quotation marks omitted); *Zavala*, 398 F. Supp. 3d at 741 (dismissing 502(a)(3) claims against non-fiduciary because plaintiff failed to allege ESOP property was "directed to any particular account over which plaintiff might have a valid claim"). She has not done so. Rather than seek a specific fund or piece of property, plaintiff simply asks the Selling Shareholder defendants to pay a specific amount of money—the amount of the "overpayment"—from the Selling Shareholder defendants' "assets generally." *Depot*, 915 F.3d at 661 (quoting *Sereboff*, 547 U.S. at 363) (internal quotation omitted). This is a classic form of legal, not equitable, relief, because "a judgment in plaintiffs' favor would have no connection to any particular fund whatsoever. Defendants would simply be required to pay a certain amount of money, and they could satisfy that obligation by dipping into any pot they like." *Id.* at 662. Count I against the Selling Shareholder defendants should be dismissed because plaintiff fails to allege actual knowledge and appropriate equitable relief.

Finally, plaintiff's claims against the LinkUs defendants in Counts I, II, IV, and V are derivative of the claims against Urbach, because they all require that Urbach caused the plan to overpay for the stock in order for any of the LinkUs defendants to be liable. Plaintiff fails to state claims against Urbach, thus her claims against the LinkUs defendants likewise fail. Plaintiff's general fiduciary breach and prohibited transaction-based claims against Urbach require her to plead plausible facts that Urbach failed to engage in a good faith process when assessing whether the ESOP was acquiring the stock in the 2013 ESOP Transaction for adequate consideration. *See Cunningham*, 716 F.2d at 1467; *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 437 (6th Cir. 2002) ("good faith. . . must be read in light of the overriding duties of Section 404"); *Perez v. Commodity Control Corp.*, No. 16-cv-20245, 2017 WL 1293619, *10 (S.D. Fla., Mar. 7, 2017).

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff fails to plead factual allegations that Urbach failed to engage in a good faith process when determining whether the 2013 ESOP Transaction was for adequate consideration. The only allegations plaintiff pleads relating to her claims against Urbach amount to nothing more than conclusory, generic allegations about supposed valuation "errors" allegedly committed by Urbach's valuation advisor. *See* Compl. ¶¶ 55-59. Plaintiff fails to provide any factual support for these allegations, pleading them all with the knowledge disclaimer. *Id.* As set forth in Urbach's Memorandum of Law in Support of his Motion to Dismiss, plaintiff may not base her claims against Urbach entirely on a wish list of things she hopes she might find. Plaintiff has pled no plausible claims against Urbach; thus her derivative claims against the LinkUs defendants fail.

## VI.   TO THE EXTENT PLAINTIFF BASES HER COUNT IV AND V CLAIMS ON CONDUCT AFTER 2015, PLAINTIFF FAILS TO STATE A CLAIM

In Count IV, plaintiff references the alleged disclosure failures discussed above, including the alleged post-transaction overvaluations of the LinkUs stock, the allegedly overstated Summary Annual Reports, the DOL investigation, and the ESOP Committee meeting minutes. In Count V, plaintiff references the alleged post-transaction overvaluations of the LinkUs stock and the DOL investigation. As discussed above, as a matter of law, these allegations are insufficient to toll the statute of repose under the fraud and concealment exception and do not revive plaintiff's expired claims based on the 2013 ESOP Transaction. These allegations also do not establish separate or independent fiduciary breaches, and plaintiff has not plausibly alleged facts establishing that they do.

First, with respect to the post-transaction valuations in 2016 to 2018, under the terms of the ESOP's governing plan document, the Administrative Committee was under no obligation to conduct annual valuations of the ESOP stock, and was not granted the discretion and authority to conduct the annual valuations of the ESOP stock. *See* André Ex. F, Section 9.04 ("Plan Administrator Responsibilities").[7] Rather, the plan provides that an independent appraiser must

---

[7] The LinkUs defendants request that this Court take judicial notice of André Decl. Exhibit F, the ESOP plan document. Plaintiff cites this document and relies on it to provide factual support for some of her allegations and has thus incorporated this document into her complaint by reference. *See supra* Section III; Compl. ¶¶ 68-69.

McDermott Will & Emery LLP
Attorneys At Law

- 23 -

LINKUS DEFENDANTS' MOTION TO
DISMISS; MEMORANDUM OF POINTS
AND AUTHORITIES

perform all valuations of company stock.  *See Id.*, Section 11.18 ("Valuation of Trust").  The Administrative Committee thus had no obligation whatsoever, and certainly had no fiduciary obligation, to ensure the post-transaction valuations were accurate.  To the extent plaintiff alleges the Administrative Committee should have disclosed the alleged 2016 to 2018 overvaluations in the summary annual reports, the overvaluations were disclosed to participants through other means, as plaintiff admits, via a special communication sent to participants after overvaluations were discovered.  Compl. ¶ 88.  As a result, even if the Administrative Committee was under any obligation to disclose this information, it more than fulfilled its duties.   The Administrative Committee was not obligated to use plaintiff's preferred communication method.  The disclosures made by the Administrative Committee were sufficient.

Second, under ERISA's regulations regarding summary annual reports, a plan administrator is required to provide *only* the specific information laid out in the regulation.  29 C.F.R. § 2520.104b-10.  The regulation does not include, and therefore does not require, the plan administrator to disclose in a summary annual report the fact that a plan is under investigation by the DOL.  The Administrative Committee therefore had no obligation whatsoever, and certainly no fiduciary obligation, to disclose the DOL investigation to plaintiffs.  Indeed, an ERISA fiduciary's affirmative disclosure obligations are limited to those required by statute.  *Acosta v. Pac. Enterprises*, 950 F.2d 611, 618–19 (9th Cir. 1991), *as amended on reh'g* (Jan. 23, 1992).  To the extent a fiduciary is ever obligated to provide additional disclosures, he is required to do so only if the circumstances require, and only to the extent the disclosures relate to the provision of benefits or defrayment of expenses.  *Id.* at 618.  Fiduciaries may be required, under certain circumstances, to disclose conditions that threaten the funding of benefits or to provide an individual faced with termination of plan coverage, upon request, complete and correct information about his status and options.  *Id*. at 619 (citing *Dellacava v. Painters Pension Fund,* 851 F.2d 22, 27 (2d Cir.1988) and *Eddy v. Colonial Life Ins. Co. of America,* 919 F.2d 747, 751 (D.C. Cir. 1990)).  The fact that the DOL has opened an investigation or even issued findings (but has not filed suit or demanded corrective action) does not fall into this limited additional disclosure requirement.

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

Plaintiff, moreover, does not allege any plausible or non-conclusory allegations that suggest defendants Warren, Morris, or Horacio Guzman owed plaintiff or the ESOP participants any fiduciary duty to provide accurate information *to the DOL* in connection with a DOL investigation, particularly when the allegedly fabricated information involved the ESOP Committee, an entity that was not itself a fiduciary to the ESOP and had no involvement with the 2013 ESOP Transaction.  There is no basis for plaintiff to allege that defendants owed any fiduciary obligation that flowed to the ESOP participants in connection with that information.

**VII.   COUNT VI SHOULD BE DISMISSED AS DERIVATIVE OF PLAINTIFF'S OTHER FAILED CLAIMS**

In Count VI, plaintiff alleges that LinkUs and Urbach entered into indemnification provisions that are impermissible under ERISA § 410, and seeks to hold LinkUs, Warren, Morris, and Horacio Guzman liable for allegedly breaching fiduciary duties by entering into the indemnification provisions.  The indemnification provisions will only apply to the extent this litigation continues, and the claim is therefore derivative of plaintiff's claims that are barred under the statute of repose.  Because those claims fail, Count VI fails as well.

**VIII.   CONCLUSION**

For these reasons, the LinkUs defendants respectfully request that this Court dismiss all claims against them with prejudice.

**MCDERMOTT WILL & EMERY LLP**

DATED:  February 21, 2022

By:   /s/ Julian L. André
      Theodore M. Becker
      Julian L. André

      Attorneys for Defendants
      HORACIO GUZMAN, DANT MORRIS,
      JON WARREN, JOSEPHINA GUZMAN,
      THE ADMINISTRATIVE COMMITTEE
      OF THE LINKUS HOLDINGS, INC
      EMPLOYEE STOCK OWNERSHIP PLAN,
      AND LINKUS HOLDINGS, INC.

DM_US 186635276-8.113020.0012

LINKUS DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW